STATE

v.

Robert DOMINICK.

No. 2007–289–C.A.

Supreme Court of Rhode Island.

April 23, 2009.

Lauren S. Zurier, Esq., Providence, for Plaintiff.

Thomas M. Dickinson, Esq., for Defendant.

Present: GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## O P I N I O N

Chief Justice WILLIAMS (ret.), for the Court.

The defendant, Robert Dominick (defendant), filed the instant appeal after the jury rendered a verdict adjudging him guilty of assault and battery upon a person over the age of sixty in violation of G.L. 1956 § 11–5–10. On appeal the defendant submits several errors alleged to have occurred during the trial on the merits. This case came before the Supreme Court for oral argument on April 8, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and examining the record and memoranda filed by the parties, we are of the opinion that this appeal may be decided at this time without further briefing or argument. For the reasons hereinafter set forth, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

The defendant and Glennis Beltram have been next-door neighbors in Chepachet, Rhode Island, for almost two decades. Although their relationship was, for several years, neighborly and friendly in nature, it eventually soured after defendant spilled oil in Ms. Beltram's shed while repairing his car. Although both defendant and Ms. Beltram, who was seventy-four years old at the time of trial, testified about a number of occurrences in which each exhibited troublesome behavior toward the other, the instant case centers around a single incident.

On May 30, 2006, Ms. Beltram was mowing her lawn as well as a portion of the lawn owned by the state abutting her property, when defendant approached her. She testified that defendant told her to get off his property and that when she refused, explaining that it was her property as well as property belonging to the state, defendant shoved her against a granite marker located on her property. Ms. Beltram explained that her right arm was scraped when it came into contact with the granite marker. In response, Ms. Beltram spit in defendant's face. She further testified that defendant came at her a second time, "pushed [her] back against the pole and threw [her] with all his force on [her] right arm again, cutting it all up."

Ms. Beltram then returned to her home, where she told her husband about the altercation and called 911. Although she elected not to press charges against defendant when the police arrived immediately after the incident, Ms. Beltram filed a formal complaint against defendant later that evening and had photographs taken of her arm.

The defendant testified about his relationship with Ms. Beltram and his version of their several confrontations, including the incident underlying the instant prosecution, which differed significantly from Ms. Beltram's account. He alleged that on May 30, 2006, while mowing her lawn, Ms. Beltram had crossed onto his property. When he told her to leave his property, Ms. Beltram insisted that the land was state-owned and then ran the mower toward his feet, "boxing" him in between the trees. The defendant denied grabbing, pushing, or hitting Ms. Beltram but explained that after she spit in his face, he "immediately grabbed the handle of the mower to move it away from his feet." The defendant explained that, when Ms. Beltram refused to let go of the lawn mower, his "body weight shifted to the right uncontrollably," causing him to lose his balance, which resulted in Ms. Beltram coming into contact with the granite marker. He testified that he did not intentionally push Ms. Beltram into the marker.

After less than an hour of deliberating, the jury returned a guilty verdict. The defendant then filed a motion for a new trial, which was denied after the trial justice characterized Ms. Beltram's testimony as "unvarnished, unembellished," while defendant's was "scripted." In explaining his ruling, the trial justice stated that "[t]he lynchpin of my conclusion is that this man was not believable and I don't blame the jury for rejecting his testimony and accepting Mrs. Beltram's testimony." The defendant timely appealed to this Court, challenging the trial justice's denial of his motion for a new trial as well as several errors that he alleged had occurred during the trial.

## II

### Analysis

As grounds for this Court to grant his appeal, defendant submits that the trial justice erred in prohibiting the use of a model during trial as demonstrative evidence. Second, defendant contends that the trial justice erred in precluding testimony of both defendant's wife and daughter. The defendant next argues that the trial justice committed error by precluding a videotape of the complaining witness during a previous incident. Finally, defendant asserts that the trial justice erred in denying his motion for a new trial.

### A

### Admissibility of the Model

■ The defendant contends that the trial justice's refusal to allow him to use a model of the granite marker on Ms. Beltram's property, against which she allegedly suffered her injuries during the incident underlying the instant prosecution, constituted prejudicial error. The defendant asserts that he wanted to use the model to illustrate the physical impossibility of Ms. Beltram's version of the events.

■ When reviewing a trial justice's decision to admit or preclude certain evidence, we apply an abuse-of-discretion standard, granting the trial justice wide latitude to determine both the relevance and the admissibility of evidence. *Accetta v. Provencal*, 962 A.2d 56, 60 (R.I.2009). "The trial justice will not have abused his or her discretion as long as some grounds supporting his or her decision appear in the record." *State v. Evans*, 742 A.2d 715, 719 (R.I.1999).

Defense counsel attempted to submit, as demonstrative evidence, a model of the granite marker upon which Ms. Beltram allegedly suffered her injuries. When presented with the model marker, the trial justice compared it to a photograph of the actual granite marker. After examining

them, he remarked: "Oh, my goodness. The disparity is so clearly obvious from the photograph and what you have put on the clerk's desk, it is certain to be different from what the actual marker looks like. I will not permit this." After hearing from both parties, the trial justice explained that the model was "not at all an intelligible representation of how [the granite marker] appeared" and, accordingly, refused to let the model be used as a demonstrative exhibit. Instead, the trial justice instructed the parties to mark up a photograph to demonstrate how the injuries were suffered.

■ Pursuant to Rule 403 of the Rhode Island Rules of Evidence, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury * * *." The trial justice must exercise his or her discretion to exclude evidence sparingly, because only evidence that is "marginally relevant and enormously prejudicial" must be excluded. *State v. Patel*, 949 A.2d 401, 412–13 (R.I.2008). Nevertheless, "[t]he ultimate determination of the effect of evidence lies in the discretion of the trial justice." *Id.* at 413. With respect to replicas and models specifically, this Court previously has held that "[a]ny evidence which is admitted purely for illustrative purposes must not only be material and relevant but must also be shown ' * * * * to be substantially like the real thing and substantially similar in operation and function to the object or contrivance in issue.' " *State v. Souza*, 110 R.I. 261, 270, 292 A.2d 214, 219 (1972) (quoting *State v. Gray*, 64 Wash.2d 979, 395 P.2d 490, 492 (1964)). Indeed, this Court has counseled trial courts to "approach the admission of models, samples and things offered exclusively for illustrative purposes with wariness and circumspection * * *." *Id.* at 269, 292 A.2d at 219.

The defendant conceded that the model of the marker was not of the same substance as the actual marker present on Ms. Beltram's property; the model was made of wood, whereas the actual marker was made of granite. It also appears, based on the transcript, that the prototype was a different shape because the actual granite marker appeared wider, thicker, and rougher than the model. Neither the model nor a photograph of the model has been included in the record before this Court; we have only the trial justice's comments about the wooden model. However, our review of the trial justice's decision with respect to admissibility of evidence is deferential. *See Accetta*, 962 A.2d at 60. The trial justice did not make a ruling with respect to the model marker after only a cursory assessment. Rather, it is clear from the record that he considered the physical appearance of the model, compared it to the photograph, and assessed its prejudicial nature. Because the trial justice examined the evidence and stated his reasons for prohibiting the model marker, which we accept as reasonable, we conclude that he did not err in precluding the model.

## B

### Preclusion of Witness Testimony

■ The defendant next asserts that the trial justice erred in precluding testimony from his wife and daughter, both of whom were eyewitnesses to two previous incidents involving Ms. Beltram. In explaining why their testimony was necessary, defendant argued at sidebar that his daughter would have testified that she witnessed Ms. Beltram throw rocks at defendant in 2003. With respect to his wife, defendant argued that she would have testified that in 2005, she heard Ms. Beltram

remark that she planned to file an assault charge against defendant. However, the trial justice excluded the testimony under Rule 608(b) of the Rhode Island Rules of Evidence. Their testimony, defendant asserts, would have undermined Ms. Beltram's allegations and bolstered his self-defense claim.

Rule 608(b) forbids attacking a witness's credibility by proving specific instances of that witness's conduct through extrinsic evidence. *See also State v. Tutt,* 622 A.2d 459, 462 (R.I.1993) (concluding that a witness other than a witness-defendant cannot be impeached by extrinsic evidence). "Therefore, should a party elect to inquire into specific instances of the conduct of a witness on cross-examination, then 'the cross-examiner is restricted to the answers of the witness' and cannot introduce extrinsic evidence for impeachment purposes." *State v. Briggs,* 886 A.2d 735, 753 (R.I.2005) (quoting *Tutt,* 622 A.2d at 462).

In attempting to admit the above-mentioned testimony, defendant sought to do precisely what our rules of evidence and the corresponding case law prohibit. Ms. Beltram, although the complaining witness in this matter, was not a party to the case. The testimony proffered by defendant, through his wife and daughter, is extrinsic evidence; testimony that Ms. Beltram threw rocks at defendant as well as testimony that Ms. Beltram stated that she planned to file an assault charge against defendant would demonstrate specific instances of Ms. Beltram's conduct. Accordingly, we agree with the trial justice in concluding that the testimony of defendant's wife and daughter should have been precluded because it would have amounted to improper impeachment evidence under our rules of evidence.

We pause to note that although defendant argues on appeal that the prof-fered testimony of his wife should have been admitted under the "prior similar false accusations" exception to Rule 608(b), this issue was not properly preserved. Because defendant did not raise this argument in the Superior Court, he has waived it on appeal. *See East Bay Community Development Corp. v. Zoning Board of Review of Barrington,* 901 A.2d 1136, 1152 (R.I.2006) ("It is well settled that we 'will not consider on appeal an issue that was not raised before the trial court.' ") (quoting *Harvey Realty v. Killingly Manor Condominium Association,* 787 A.2d 465, 466–67 (R.I.2001)).

## C

### Preclusion of the Videotape

The defendant next suggests that the trial justice erred when he precluded a videotape of an incident alleged to have occurred between defendant and Ms. Beltram in 2005. This proffer of evidence, however, was not transcribed, and there is nothing in the lower court record concerning defendant's attempt to have the videotape admitted into evidence. Hence, without anything on record concerning this proffer, there is nothing for this Court to review, and the issue is deemed waived. *See State v. Gardiner,* 895 A.2d 703, 710 (R.I.2006); *State v. Marr,* 731 A.2d 690, 693–94 (R.I.1999).

## D

### Motion for New Trial

The defendant's final argument on appeal is that the trial justice erred in failing to grant his motion for a new trial. He asserts that the jury would not have found him guilty if they had been permitted to make use of the model, had heard testimony from defendant's wife and

daughter, and had been permitted to view the videotape, all discussed above.

 When a trial justice is faced with a motion for a new trial, he or she "acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Cerda*, 957 A.2d 382, 385 (R.I.2008) (quoting *State v. Bergevine*, 942 A.2d 974, 981 (R.I.2008)). In reviewing a trial justice's ruling on a motion for a new trial, this Court conducts a deferential review, according great weight to the trial justice's decision, provided the trial justice "articulated an adequate rationale for denying [the] motion." *Id.* at 385–86. Indeed, "[a] trial justice's ruling on a new-trial motion will not be overturned unless the trial justice was clearly wrong or unless he or she overlooked or misconceived material and relevant evidence that related to a critical issue in the case." *Id.* at 386 (quoting *State v. Lynch*, 854 A.2d 1022, 1046 (R.I.2004)).

In the instant matter, we conclude that the trial justice did not err in denying defendant's motion for a new trial. The reasons defendant asserts as bases for a new trial all have been rejected in this opinion. As such, we cannot conclude that the trial justice erred in likewise rejecting these contentions as grounds for a new trial.

Further, we note that this trial hinged on the credibility of the witnesses presented by each side. The trial justice considered the credibility of both the defendant and Ms. Beltram in making his decision and remarked that he found Ms. Beltram's testimony believable whereas the defendant's testimony appeared "scripted." He further articulated that there was "ample evidence" to convict the defendant of the crime with which he was charged, noting that it was "ludicrous" for the defendant even to suggest that he had acted in self-defense. Accordingly, we conclude that the trial justice properly assessed the credibility of the witnesses and articulated his reasons for denying the defendant's motion for a new trial. We affirm that decision.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.