**STATE**

v.

**William GRULLON.**

No. 2007–214–M.P.

Supreme Court of Rhode Island.

Dec. 10, 2009.

Christopher R. Bush, Department of Attorney General, for Plaintiff.

Randy Olen, Esq., for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

The defendant, William Grullon (William or Willy), appeals from his convictions for two counts of possession with intent to distribute cocaine and one conviction of conspiracy to violate Rhode Island's Uniform Controlled Substances Act, G.L. 1956 chapter 28 of title 21.[1] The parties appeared for oral argument on November 4, 2009, pursuant to an order of this Court ordering them to show cause why the issues raised in this appeal should not summarily be decided without further briefing or argument. After considering the record, the memoranda submitted by the parties, and the oral arguments advanced by each, we are of the opinion that cause has

not been shown and that the case should be decided at this time. For the reasons stated below, we affirm the Superior Court's judgments of conviction.

## I

### Facts

On February 18, 2005, Kevin Murray, a painting contractor and recovering drug addict, contacted the New Shoreham Police Department to discuss the flow of cocaine on Block Island.[2] Murray met with Police Chief Vincent Carlone and Corporal Paul Deane to arrange a controlled purchase of cocaine from John Grullon, a Block Island resident who Murray had known for several years.[3] The police supplied Murray with a $100 bill to purchase the cocaine. At a meeting at John's condominium, John agreed to sell Murray a small amount of cocaine for $60, which John retrieved from the hemline of a curtain covering a sliding glass door. Murray paid John with the $100 bill and received $40 in change plus a bag of cocaine.

After February 18, 2005, Murray and John had additional discussions about whether Murray could buy more cocaine from John and sell it himself on Block Island. Over a dinner, John told Murray that Murray could buy as much cocaine as he wished because John had access to cocaine. John described how he brought

---

1. The defendant failed to timely file his notice of appeal of his judgments of conviction pursuant to Article I, Rule 4(b) of the Supreme Court Rules of Appellate Procedure. Therefore his appeal was dismissed. On June 21, 2007, he also filed a petition for a writ of certiorari with this Court and on June 27, 2007, we granted the petition to review his judgments of convictions. *See State v. Pena–Rojas*, 822 A.2d 921, 922–23 (R.I.2003) (dismissing appeal because it failed to comply with Article I, Rule 4(b) but granting petition

for certiorari in order to consider the defendant's appellate arguments).

2. New Shoreham is the only municipality on Block Island.

3. We refer to John Grullon and Willy Grullon by their first names, John and Willy. This is for the reader's ease and we do not intend any disrespect to either John or Willy Grullon.

cocaine onto Block Island by surreptitiously placing it in a potato chip container. John also told Murray that if he needed cocaine and John was not available, Murray should contact Willy, his brother.

On March 4, 2005, Murray ran into Willy at a painting job, and Willy agreed to sell Murray cocaine. Murray contacted Chief Carlone, who gave him three $20 bills with which to make the purchase. Murray met with Willy later that day at Willy's condominium, and Willy sold him a plastic bag that contained cocaine.

The next day, Murray arranged, this time by telephone, for still another purchase of cocaine. After obtaining another $60 from Chief Carlone, Murray met again with Willy but this time at John's condominium. At that meeting, Willy and Murray discussed whether Murray could purchase a significant amount of cocaine from Willy, an amount of at least fifty bags of the drug, so that Murray could resell it. Willy told Murray that he could fill such an order as soon as John returned to the island; he said that would be within a couple of days. Murray then purchased another $60 worth of cocaine from Willy, and he left John's condominium.

Over the next four days, Murray and Willy spoke over cellular-phones about when John would be returning to Block Island. Initially, Willy told Murray that John would arrive on March 7, but he then said that he would not arrive until March 8. Finally, on March 9, Willy and Murray

arranged to meet at John's apartment at 3:30 that afternoon, at which time Murray would purchase the agreed upon fifty bags of cocaine.

The New Shoreham police learned that John was scheduled to arrive at the Block Island State Airport, on March 9, 2005, on the 1:30 p.m. flight from Westerly, Rhode Island. The police observed as Willy drove into the airport at 1:45 p.m. After John's flight arrived, the police watched as he departed the plane carrying multiple plastic bags, and then as he walked to Willy's truck. John got into the truck and Willy began to drive away. The trip was a short one, however, because the police stopped the vehicle before it could leave the airport. A search of John's bags, pursuant to a search warrant, found a Pringles potato chip container that held 175 plastic bags filled with cocaine. Not surprisingly, Willy and John were placed under arrest.

On May 23, 2005, the state filed a criminal information charging Willy with committing four crimes. Count 1 of the information alleged that on March 9, 2005, Willy violated § 21–28–4.01(a)(2)[4] when he unlawfully possessed cocaine with the intent to deliver it. Count 2 alleged that Willy violated § 21–28–4.08[5] when he conspired with his brother John to possess cocaine with the intent to deliver. Counts 3 and 4 both alleged that Willy violated

---

**4.** General Laws 1956 § 21–28–4.01(a)(1) provides that "[e]xcept as authorized by this chapter, it shall be unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance." Section 21–28–4.01(a)(2) provides that anyone who violates § 21–28–4.01(a)(1) with respect to schedule I or II controlled substances (except for marijuana) "is guilty of a crime and upon conviction may be imprisoned to a term up to life, or fined not more than five hundred thousand dollars ($500,-

000) nor less than ten thousand dollars ($10,-000), or both."

**5.** Section 21–28–4.08 provides that "[a]ny person who conspires to violate any provision of this chapter is guilty of a crime and is subject to the same punishment prescribed in this chapter for the commission of the substantive offense of which there is a conspiracy to violate."

§ 21–28–4.01(a)(4)(i)[6] when he unlawfully delivered cocaine to Murray on March 4 and March 5, respectively. The state also filed a criminal information against John that alleged that he committed four criminal offenses including that he possessed cocaine with the intent to deliver on March 9, 2005, that he conspired with Willy to possess cocaine with the intent to deliver on March 9, 2005, and that he delivered cocaine to Murray on February 18, 2005.[7]

Trial began on December 6, 2005. Willy and John were tried jointly, as codefendants, and they were represented by attorneys from the same law firm. Both defendants waived their right to a jury trial and opted instead for a nonjury trial.

At trial, the state called as witnesses New Shoreham Police Chief Carlone, the informant Kevin Murray, New Shoreham Corporal Paul Deane, Westerly Police Department Detective Mark Carrier, and New Shoreham Patrolman Joseph DeMatteo. Willy took the stand in his own defense.

On December 15, 2005, the trial justice found Willy guilty of three offenses.[8] He was convicted of conspiracy to violate the Uniform Controlled Substances Act, for which he was sentenced to ten years, with three years to serve and a seven-year suspended sentence, with a seven-year period of probation. He also was convicted of two counts of possession with intent to deliver cocaine; for these offenses he received two sentences of five years, with two years to serve and a three-year suspended sentence, with a three-year period of probation. All sentences were to run concurrently. Willy was acquitted of the charge of possession with intent to deliver cocaine on March 9, 2005.

Before this Court, defendant raises numerous arguments why his multiple convictions should be vacated and why he is entitled to a new trial. He argues that he received ineffective assistance of counsel, based upon two independent theories. Next, he argues that the trial justice erred when he denied his motion to dismiss on his conspiracy charge. The defendant also argues that the court abused its discretion when it admitted into evidence a photocopy of a $100 bill, because the state failed to demonstrate cause for not introducing the original. He also contends that there was error in the admission of a bag, alleged to have contained cocaine, because the chain of custody was not established. Finally, defendant maintains that the trial justice abused his discretion when he allowed testimony about a cellular-phone conversation between Murray and Willy that the state did not disclose in discovery.

## II

### Analysis

#### A

#### Ineffective Assistance of Counsel

■ The defendant raises two separate arguments with respect to his claim that

---

6. Section 21–28–4.01(a)(4) provides that:

"[a]ny person, except as provided for in subdivision (2) of this subsection, who violates this subsection with respect to: (i)[a] controlled substance classified in schedule I or II, is guilty of a crime and upon conviction may be imprisoned for not more than thirty (30) years, or fined not more than one hundred thousand dollars ($100,000) nor less than three thousand dollars ($3,000), or both."

7. Both criminal informations alleged that Willy and John committed the offense of delivering cocaine within 300 yards of a school or playground. Before trial, the state dismissed that charge against each defendant.

8. The trial justice also found John guilty of possession with intent to deliver on February 18, 2005, possession with intent to deliver on March 9, 2005, and of conspiring with Willy to possess cocaine with the intent to deliver it.

he was denied effective assistance of counsel in violation of his Sixth Amendment right to counsel. First, defendant argues that because his attorney and his codefendant's attorney were both members of the same law firm, his attorney was burdened by an inherent conflict of interest, and therefore defendant "was denied certain defenses and trial strategies that would have been antagonistic" to his codefendant's case. Second, defendant argues that his attorney provided him with ineffective assistance because he failed to timely file a motion for new trial.

■ This Court consistently has held that "allegations of ineffective assistance of counsel are 'more properly cognizable in post-conviction proceedings.'" *State v. McManus*, 941 A.2d 222, 233 (R.I.2008) (quoting *State v. Gonsalves*, 476 A.2d 108, 112 (R.I.1984)). We will hear an allegation of ineffective assistance of counsel on direct appeal when the trial justice has made a specific ruling on the issue. *See id.* (citing *Gonsalves*, 476 A.2d at 112).

However, no such exception to the general rule exists here. The defendant never raised an objection about his trial counsel or any conflict of interest during the trial court proceedings. Because he raises this issue for the first time on appeal, we will not entertain defendant's argument on direct review.

### B

### Motion to Dismiss Conspiracy Charge

■ The defendant further argues that the trial justice erred because he did not grant his motion to dismiss under Rule 29 of the Superior Court Rules of Criminal Procedure. He contends that the state was required to prove, as set forth in the criminal information and as further detailed in the state's response to defendant's bill of particulars, that the conspiracy occurred on March 9, 2005. At trial, the state introduced evidence of a conspiracy between John and Willy that began on March 4, 2005, and led up to Willy's arrest on March 9, 2005.[9] The defendant claims that the introduction of evidence of a conspiracy before March 9, 2005, prejudiced him, because the information and the state's response to the bill of particulars both specified that the conspiracy occurred on the discrete date of March 9.

### Analysis

When he denied defendant's Rule 29 motion to dismiss, the trial justice rejected his argument that he was prejudiced by the variance between the proof at trial and

9. At oral argument, defendant advanced an argument that he was entitled to a dismissal of the conspiracy charge because of the insufficiency of the evidence. The defendant did not develop or even raise this argument in his pre-briefing statement to this Court, and therefore, we need not consider this argument.

Nonetheless, we are satisfied that even if properly before us this argument has no merit. *See State v. Graham*, 941 A.2d 848, 863 (R.I.2008) (explaining that proof of a conspiracy may, and often must be, established by inferences based upon evidence of the defendant's and his alleged coconspirators relationships, actions, conduct and the circumstances) (citing *State v. Gordon*, 508 A.2d 1339, 1349 (R.I.1986)). Here, the relationship between Willy and John reflected an awareness that each knew that the other sold cocaine. Additionally, the reasonable inferences drawn from Willy and John's actions suggest an agreement between them to sell cocaine to Murray. For example, one can infer that Willy and John were in agreement to possess and deliver cocaine because Willy sold cocaine to Murray at John's condominium, Willy picked John up at the airport when John possessed 175 bags of cocaine, and Willy agreed to meet with Murray to deliver fifty bags of cocaine to him at John's condominium just hours after John arrived at the airport.

the bill of particulars. He ruled that defendant was not deprived of due process because the proof of conspiracy at trial between March 4 and March 9 was reasonably close to the facts and allegations contained in the bill of particulars and information that the conspiracy occurred "on or about" March 9. We agree with the trial justice that defendant suffered no prejudice.

General Laws 1956 § 12–12–10 provides that "[a] defendant shall not be acquitted or discharged on the ground of variance between the allegation and proof if the essential elements of the crime are correctly stated in the indictment, information, or complaint, unless the defendant is prejudiced in his or her defense by the variance." Section 12–12–10 further provides that a "defendant shall not be acquitted or discharged by reason of * * * failure to prove unnecessary allegations in the description of the crime or by reason of any other immaterial mistake in the indictment, information, or complaint." This Court also has held that "[t]he rules governing variance between proof and pleading apply to a bill of particulars just as they do to an indictment or information." *State v. Collins*, 543 A.2d 641, 655 (R.I. 1988) (citing *State v. Lanigan*, 528 A.2d 310, 319 (R.I.1987)).

■ The central inquiry under § 12–12–10 is to determine whether defendant suffered actual prejudice. *See State v. McParlin*, 422 A.2d 742, 743 (R.I.1980). We will not reverse a conviction if the information properly sets forth the essential elements of the crimes charged, unless there is a variance that prejudices the defendant's defense. *See State v. Markarian*, 551 A.2d 1178, 1182 (R.I.1988) (citing *State v. McKenna*, 512 A.2d 113, 114–15 (R.I.1986) and *McParlin*, 422 A.2d at 744).

Here, the "on or about" March 9, 2005 language contained in the information and bill of particulars reasonably gave defendant notice of an alleged conspiracy between him and John in the days surrounding March 9, 2005. The words "on or about" cannot be read to confine the allegations in the information to a single day. The defendant has not advanced any specific argument that he was prejudiced by any difference in wording between the bill of particulars and the evidence offered at trial. After a review of the record, we conclude that defendant was aware that the state intended to offer evidence of his involvement with Murray between March 4, 2005, and March 9, 2005, as well as his knowledge of and participation in John's cocaine business and his scheduled arrival at the Block Island airport. We conclude that defendant was not subjected to any surprise or prejudice from the introduction of this evidence at trial. *See, e.g., State v. Brown*, 626 A.2d 228, 232 (R.I.1993) (holding defendant did not suffer surprise or prejudice from variance between bill of particulars and proof at trial because defendant was made aware of the admitted evidence through discovery); *McKenna*, 512 A.2d at 115 (determining lack of a specific date of offense in a sexual assault indictment did not prejudice defendant because defendant denied having any sexual relations with the complaining witness and did not offer any alibi witnesses in his defense).

## C

### The Photocopy of the $100 Bill

■ At trial, the state offered into evidence a photocopy of the front side of the $100 bill that Chief Carlone testified he provided to Murray on February 18, 2005, so that Murray could purchase cocaine from John. Willy objected to the admission of this evidence, arguing that the state should not have been permitted to introduce the photocopy. He contends that the

state could have produced the original $100 bill by tracking it down through its serial number and that it failed to do so.[10] Furthermore, defendant argued that the photocopy failed to qualify as a duplicate because only one side of the bill was copied. In response, the state argues before us, as it did at trial, that it was excused from producing the original $100 bill because Murray used it to purchase cocaine from John, and the bill was last in John's possession. The trial justice admitted the photocopy of the bill because he accepted the state's representation that the original was unavailable for purposes of Rule 1004 of the Rhode Island Rules of Evidence, because the currency was either in defendant's possession or unobtainable by any judicial process.

### Standard of Review

 This Court reviews the trial justice's ruling on the admissibility of evidence under an abuse of discretion standard. *State v. Merida*, 960 A.2d 228, 238 (R.I.2008) (citing *State v. Breen*, 767 A.2d 50, 58 (R.I.2001)). We allow the "trial justice wide latitude to determine both the relevance and the admissibility of evidence." *State v. Dominick*, 968 A.2d 279, 282 (R.I.2009) (citing *Accetta v. Provencal*, 962 A.2d 56, 60 (R.I.2009)). If the record contains some grounds for supporting the trial justice's decision, we will not determine that the trial justice abused his or her discretion. *Dominick*, 968 A.2d at 282 (citing *State v. Evans*, 742 A.2d 715, 719 (R.I.1999)).

### Analysis

We hold that the trial justice did not abuse his discretion when he admitted the photocopy of the $100 bill into evidence and that the state was properly excused from producing the original. Rule 1004 provides that:

> "The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if—* * *
>
> "(2) *Original Not Obtainable.* No original can be obtained by any available judicial process or procedure; or
>
> "(3) *Original in Possession of Opponent.* At a time when an original was under the control of the party against whom offered, the party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and the party does not produce the original at the hearing[.]"

It may be that the original $100 bill Murray used to purchase cocaine from John on February 18, 2005, was not obtainable either because it remained in John's possession, or it may be that the bill was in general circulation and not obtainable by any judicial process. Either way, we see no abuse of discretion by the trial justice in ruling that the original was not obtainable. Further, the trial justice did not abuse his discretion when he admitted a photocopy of just one side of the bill. *See* Rule 1004 (permitting other evidence of writing if an original is not required).

### D

### Admissibility of Bag Containing Cocaine

 The defendant argues that the trial justice erred when he admitted into evidence a bag containing a white powder (later determined to be cocaine) that the

---

**10.** We question whether defendant had standing to object to the admission of the $100 bill because it was not offered as evidence against him, but rather with respect to his brother John. But because the trial justice ruled on his objection, we will consider this issue preserved for appellate review.

state alleged Kevin Murray purchased from John Grullon on February 18, 2005, and then subsequently turned over to Corporal Deane and Chief Carlone, because the chain of custody was not established. But before we consider whether the trial justice erred, we first must consider if this issue was properly preserved for appellate review.

The defendant objected at trial when the state requested that the bag be admitted into evidence. The trial justice conditionally admitted the bag and said that "[i]f there is insufficient testimony forthcoming, then counsel can feel free to renew their objection and the Court will hear them at that time." [11] The defendant did not renew his objection to the admission of the bag at any later point during trial. In our opinion, defendant's failure to renew his objection operates as a waiver of any challenge he may have had to the admission of this evidence. Because this issue was waived for purposes of appellate review, we will not consider it. *See State v. Diefenderfer*, 970 A.2d 12, 30 (R.I.2009).

### E

### The Phone Conversations with the Informant

■ Finally, defendant argues that the trial justice committed reversible error when he admitted Murray's testimony about a series of cellular-phone conversa-

tions with him between March 6 and March 9, because the testimony should have been stricken as a discovery violation pursuant to Rule 16 of the Superior Court Rules of Criminal Procedure.[12] The claimed discovery violation results from what he says was the state's insufficient disclosure about the mode of conversation between him and Murray, which is described in Murray's statement to the police on April 4, 2005. The state's response to defendant's discovery request indicates only that Murray and Willy conversed about Murray's expectations of more cocaine; the response, defendant maintains, did not indicate where or by what means those conversations took place. At trial, Murray testified that he and Willy conversed by cellular-phone, not face-to-face. Based upon this alleged violation, Willy argues that he was highly prejudiced and that the trial justice erred in admitting the testimony.

### Standard of Review

■ We review the trial justice's decision on whether to impose a Rule 16 sanction under an abuse of discretion standard. *State v. Horton*, 871 A.2d 959, 970 (R.I. 2005) (citing *State v. Pona*, 810 A.2d 245, 248 (R.I.2002)).

### Analysis

The trial justice overruled defendant's evidentiary protest "based upon the objec-

---

11. Rule 104(b) of the Rhode Island Rules of Evidence provides that "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon the introduction of evidence sufficient to support a finding of the fulfillment of the condition."

12. Rule 16(a)(1) of the Superior Court Rules of Criminal Procedure provides, in pertinent part:

"Upon written request by a defendant, the attorney for the State shall permit the de-

fendant to inspect or listen to and copy or photograph any of the following items within the possession, custody, or control of the State, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the State: "(1) all relevant written or recorded statements or confessions, signed or unsigned, or written summaries of oral statements or confessions made by the defendant, or copies thereof[.]"

tion that the [s]tate failed to inform the defendant of this information in discovery."

In reviewing the trial justice's decision, we first must analyze whether the state did, in fact, fail to disclose discoverable evidence and, if so, the reason for that failure to do so. Here, the conversations between Willy and Murray were clearly discoverable; the trial justice ruled Murray's testimony about them admissible because the state had informed defendant of both the existence of the conversations and their subject matter. We agree with the trial justice.

The defendant was aware that Murray was alleging that Willy probably not only knew when John would be returning to Block Island, but also that John would have cocaine with him when he returned. We do not see how the failure to disclose the means of communication has any significance whatsoever in the context of this case. Therefore, we reject the defendant's argument that the trial justice erred when he denied his motion to exclude Murray's testimony about these conversations, and we affirm the trial justice's ruling.

### III

### Conclusion

For the reasons set forth in this opinion, we affirm the judgments of conviction in this case. The record shall be returned to the Superior Court.