**Supreme Court**

No. 2011-70-C.A.

(P2/09-3192AG)

State                           :

    v.                          :

Samnang Tep.                    :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                      :

v.                     :

Samnang Tep.          :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  The defendant, Samnang Tep, appeals from a Superior Court judgment of conviction on two counts of assault with a dangerous weapon and one count of discharging a firearm while committing a crime of violence.  On appeal, Tep contends that the trial justice abused his discretion when he (1) admitted into evidence a prejudicial hearsay statement as an excited utterance; and (2) allowed a lay witness to testify as to Tep's mental state at the time of the alleged shooting.  Tep's appeal came before the Supreme Court on September 20, 2012, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After careful inspection of the record and the written and oral submissions of the parties, we conclude that this appeal may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

On October 26, 2009, Tep was charged with two counts of felony assault with a dangerous weapon in violation of G.L. 1956 § 11-5-2 (counts 1 and 2), one count of conspiracy to commit

an assault with a dangerous weapon in violation of G.L. 1956 § 11-1-6 (count 3), one count of committing a crime of violence while armed with a dangerous weapon in violation of G.L. 1956 § 11-47-3 (count 4), and one count of using a firearm while committing a crime of violence in violation of § 11-47-3.2(b)(1) (count 5).[1]

It is unnecessary to recite the details of the convoluted factual history leading to Tep's conviction. Suffice it to say, it resulted from a drug deal gone wrong. With that in mind, we turn to the relevant facts adduced at trial. Early in the morning of March 1, 2009, Matthew DePetrillo and Robert Murray refused to pay Francis[2] Meseck for some marijuana, resulting in multiple angry phone calls and some broken windows at Murray's home at 83 Chestnut Street in Cranston.[3] That afternoon, Meseck received three more phone calls from DePetrillo. Two calls indicated that he was on the bus and then on foot, headed to Meseck's house looking for a fight, and another call informed Meseck that DePetrillo had just "shot up" Meseck's house. Between the second and third phone calls, Lawrence Saraceno, James Monteiro, James McArdle, and Tim Santiago[4] waited for DePetrillo to arrive at the house they shared with Meseck at 33 Peach Avenue[5] in Providence. Saraceno, Monteiro, and Santiago waited on the porch, while McArdle watched through the living-room window.

---

[1] On June 14, 2010, the first day of trial, counts 3 and 4 were dismissed pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

[2] The record alternately refers to this witness as both "Francis" and "Frances" Meseck.

[3] Murray's sister, Erin L. Murray, who also lived at 83 Chestnut Street, was charged with counts 1, 2, and 3 in the criminal information, but all charges against her were ultimately dismissed under Rule 48(a).

[4] Santiago was McArdle's sixteen-year-old stepson and a runaway from the Department of Children, Youth & Families.

[5] The record alternately refers to this address as "Peach Street" and "Peach Avenue."

At about 5:30 p.m., two cars drove by: a red Acura and a white Acura. DePetrillo was in one of the cars. Tep and Yara Chum[6] exited one of the cars and approached the Peach Avenue house. Chum asked the men on the porch which one of them "broke [his] homegirl's windows."[7] Monteiro responded that Meseck was responsible but was not at home. Chum, becoming angry at Santiago for smiling at him, told Tep to shoot the men on the porch. Tep took a gun out of the pocket of his hooded sweatshirt, pointed it, and shot once, hitting the porch and the door. Saraceno testified that he thought Tep was "focused on—at, in my mind, hitting one of us." The three men on the porch then ran inside the house. Although no one was hit by the bullet, Monteiro was hit with splinters of wood as the bullet went through one of the posts on the porch railing. After Tep fired the gun, he and Chum ran from the scene. McArdle called 911, and police officers arrived shortly thereafter. Officer Jeffrey Richards, one of the first to arrive, testified that all three of the men who were at the house appeared "very nervous."[8] At trial, Officer Richards recalled what McArdle said to him when he arrived at the scene:

> "[McArdle] stated two Asian males walked up to them on Peach Street, one of the male subjects with a shiny jacket stated—I don't know exactly the words, but he stated that your boys smashed our boys' windows last night and he said, 'Shoot these boys' or 'Shoot these guys,' which the second Asian male with the hooded jacket pulled out a weapon and shot one round into the front door of Peach Ave."

---

[6] Chum was charged in the same criminal information as Tep, but their cases were tried separately. Chum's appeal was recently decided by this Court. See State v. Chum, No. 2011-254-C.A. (R.I., Oct. 25, 2012).

[7] Although McArdle, Monteiro, and Saraceno testified differently as to the exact wording of Chum's statement, their testimony as to the substance of his statement was consistent.

[8] Because Santiago left the house after McArdle called 911, he was not at the scene when the police arrived.

He also testified that McArdle appeared both "nervous" and "shaken up." Later, at the police station, McArdle, Monteiro, and Saraceno each separately identified Tep and Chum from photo arrays.

After McArdle called 911, Anthony Bucci, a patrol officer in the Cranston Police Department, received a dispatch concerning the shooting that described the two cars: a red Acura and a white Acura, driven by Asian males. Traveling in an unmarked police car, Officer Bucci went to 83 Chestnut Street in response to the dispatcher's direction that the suspects may have been heading there. Once on Chestnut Street, Officer Bucci saw a red Acura, occupied by two Asian males. He testified that, when he made eye contact with the driver, the driver's eyes "became wide" and "the vehicle sped off and began traveling at a high rate of speed." Officer Bucci pursued the car, and after he stopped it, the passenger exited the car and the driver moved to the passenger seat. He testified that he recognized the passenger who exited the car as Chum, whom he knew from a previous encounter. Tep, the driver who moved into the passenger seat, was arrested and charged with the offenses noted above.

At the conclusion of the trial, the jury found Tep guilty of two counts of assault with a dangerous weapon (counts 1 and 2) and one count of using a firearm while committing a crime of violence (count 5). On counts 1 and 2, the trial justice sentenced Tep to two concurrent ten-year sentences, with all ten years to serve, and on count 5, sentenced Tep to another ten years, with five years to serve and five years suspended, with probation. Count 5 was to run consecutively to the two concurrent sentences.[9] Tep timely appealed to this Court.

---

[9] Tep's prebriefing statement indicates that he was sentenced to five years, with five to serve and five years suspended with probation for counts 1 and 2, but our review of the record confirms that he was sentenced as we describe it.

**Issues on Appeal**

On appeal, Tep raises two evidentiary issues. First, Tep contends that the trial justice abused his discretion when he admitted McArdle's hearsay statement into evidence as an excited utterance. Tep argues that the trial justice admitted the testimony without first requiring a proper foundation, and that because Richards was a police officer, admission of the hearsay testimony unfairly bolstered the complainants' allegations.[10] Second, Tep contends that the trial justice abused his discretion when he allowed Saraceno to testify about Tep's mental state at the time of the shooting. Tep argues that the trial justice should have required Saraceno to provide concrete details to explain how he inferred Tep's intention from his action before admitting Saraceno's statement as a lay opinion.

**III**

**Standard of Review**

This Court's "review of the trial justice's decision with respect to admissibility of evidence is deferential." State v. Dominick, 968 A.2d 279, 283 (R.I. 2009) (citing Accetta v. Provencal, 962 A.2d 56, 60 (R.I. 2009)). "When reviewing a trial justice's decision to admit or preclude certain evidence, we apply an abuse-of-discretion standard, granting the trial justice wide latitude to determine both the relevance and the admissibility of evidence." Id. at 282 (citing Accetta, 962 A.2d at 60). Therefore, evidentiary determinations made by the lower court "will not be disturbed on appeal absent a clear abuse of that discretion." Ims v. Town of

---

[10] We note that Tep failed to object to the admission of McArdle's excited utterance on the bolstering ground during trial and failed to offer any analysis on this point in his prebriefing statement or during oral argument before this Court. The "raise-or-waive rule precludes us from considering issues at the appellate level that were not properly presented before the trial court." State v. Hak, 963 A.2d 921, 927 (R.I. 2009) (citing State v. Bido, 941 A.2d 822, 828-29 (R.I. 2008)). Therefore, we will not consider this argument on appeal.

Portsmouth, 32 A.3d 914, 926 (R.I. 2011) (quoting State v. Mann, 889 A.2d 164, 166 (R.I. 2005)).

## IV

## Discussion

## A

## McArdle's Excited Utterance

Tep first argues that the trial justice abused his discretion when he admitted McArdle's hearsay statement in Officer Richards's testimony as an excited utterance pursuant to Rule 803(2) of the Rhode Island Rules of Evidence. The Rule 803(2) hearsay exception applies to out-of-court statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The rationale for this exception is based on "the belief that at the time the declarant makes the statement, he or she is still under the strain of the startling event that triggered the statement, with little or no opportunity to deliberate or prevaricate." State v. Momplaisir, 815 A.2d 65, 70 (R.I. 2003). In determining whether a statement is an excited utterance, this Court has rejected "a blind obedience to a clock and an hour-by-hour count of the time that has passed between the event and the declaration." State v. Creighton, 462 A.2d 980, 983 (R.I. 1983). Rather, we have stressed that the crux of the determination is "whether from a consideration of all the facts the trial justice is satisfied that the declarant was still laboring under the stress of the nervous excitement when he or she spoke." Id.

Here, Officer Richards testified that McArdle made the statement at issue immediately after he arrived at the Peach Avenue house. He testified that, when he arrived, all three of the men who were at the house appeared "very nervous." Additionally, he specifically described

McArdle's demeanor as both "nervous" and "shaken up." Tep argues that the state did not lay a proper foundation before the trial justice admitted Officer Richards's testimony as an excited utterance. However, in a sidebar conference, the trial justice overruled Tep's objection because (1) he was "satisfied that [Officer Richards] arrived almost immediately after the report of shots fired at [Peach Avenue]," and (2) he was convinced by "the demeanor of the individuals, particularly McArdle, [who was] shaken up and nervous." Given the trial justice's stated reliance on these factors, we hold that it was not an abuse of discretion to admit McArdle's statement as an excited utterance. We therefore affirm the trial justice's ruling on this point.

**B**

**Saraceno's Lay-Witness Opinion Testimony**

Tep next argues that the trial justice abused his discretion when he admitted Saraceno's statement as lay-witness opinion testimony pursuant to Rule 701 of the Rhode Island Rules of Evidence. Rule 701 limits testimony by witnesses who are not qualified as experts to only "those opinions which are (A) rationally based on the perception of the witness and (B) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Thus, "[a] lay witness may not invade the jury's fact-finding role by proffering an opinion, unless that opinion is based upon personal perception and helps the jury." Mann, 889 A.2d at 168 (citing State v. Barrett, 768 A.2d 929, 940 (R.I. 2001)).

At trial, Saraceno testified that Tep "aimed" the gun at him and the other men on the porch and that Tep was "focused on—at, in my mind, hitting one of us." Tep argues that this statement indicated what Saraceno believed to be Tep's mental state at the time of the shooting. We disagree. Saraceno's statement merely described what he perceived, not what he believed Tep thought or intended. Observing Tep's demeanor and the pointed gun, Saraceno rationally

- 7 -

concluded that Tep was aiming at the men on the porch. It is unnecessary to require an expert to testify about what a lay individual could rationally conclude. We also note that Tep did not object when, shortly before, Saraceno testified that the gun "was aimed right at me, basically. That's the way I saw it." Both statements described what Saraceno perceived while looking at Tep, but Tep only objected to the latter. Therefore, we hold that the trial justice did not abuse his discretion when admitting Saraceno's statement as lay-witness opinion testimony, and we affirm the trial justice's ruling on this point.

## V

## Conclusion

We affirm the judgment of the Superior Court, to which we remand the record in this case.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**


*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**       State v. Samnang Tep.

**CASE NO:**       No. 2011-70-C.A.
                  (P2/09-3192AG)

**COURT:**       Supreme Court

**DATE OPINION FILED:**   November 14, 2012

**JUSTICES:**       Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**       Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                  Associate Justice Robert D. Krause

**ATTORNEYS ON APPEAL:**

                  For State:   Jane M. McSoley
                           Department of Attorney General

                  For Defendant:  Katherine Godin, Esq.