WESTERN MASS. BLASTING CORP.

v.

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE
COMPANY et al.

No. 2000–143–Appeal.

Supreme Court of Rhode Island.

Nov. 1, 2001.

Richard O. Lessard, Warren, For Plaintiff.

David P. Whitman/Thomas R. Bender, Providence, For Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

Asserting that its blasting activity did not cause any physical damage to a homeowner's residence, a contractor sued the homeowner's insurance company and sought to preclude it from obtaining reimbursement for its settlement of the homeowner's property-damage claims. It alleged, among other claims, tortious in-

terference with contract. A Superior Court motion justice dismissed the contractor's complaint, and entered summary judgment in favor of the homeowner's insurer.

The plaintiff-contractor, Western Mass. Blasting Corporation (Western), has appealed from this summary judgment, one that the court entered under Rule 54(b) of the Superior Court Rules of Civil Procedure. In so ruling, the court dismissed Western's claims against defendant, third-party insurer Metropolitan Property and Casualty Insurance Company (Metropolitan). Western argues that its complaint and affidavit in opposition to Metropolitan's dismissal motion set forth sufficient facts to support its claims for tortious interference with contract and defamation; therefore, it contends, the motion justice should not have granted summary judgment in Metropolitan's favor.

After a prebriefing conference, a single justice of this Court directed the parties to show cause why the appeal should not be summarily decided. After considering the parties' written and oral submissions, we conclude that they have not shown cause and that we can decide the appeal at this time.

Western alleged in its complaint that in August 1996, an insured homeowner named Barbara Low asserted that Western's blasting activities had caused damage to her house in Johnston. She then filed a claim with her insurer, Metropolitan, which investigated the claim and eventually paid her $20,241.49 in settlement. Metropolitan thereafter sought reimbursement from Western and its insurer, defendant Ranger Insurance Company (Ranger). In doing so, Metropolitan alleged that Ranger's insured (Western) had caused the physical damage to Low's residence

through its blasting activities in that area and that, having settled the claim for $20,241.49 and having subrogated itself for Low, Metropolitan was entitled to be indemnified in that amount. Western asserted that, using scientific evidence, it eventually proved to its own insurer, Ranger, that Western could not possibly have caused the damage to Low's home.

Nevertheless, by agreement between the insurers, Metropolitan's subrogation claim against Western and Ranger proceeded to binding arbitration, a proceeding in which Western allegedly did not participate. As a result of the arbitration, Ranger was ordered to reimburse Metropolitan for the amount of Low's settlement. After learning of the arbitration result, Western notified both Metropolitan and Ranger that any payment by either Western or Ranger to Metropolitan for the Low claim would cause damage to Western. Western further asked Metropolitan to cease its efforts to collect money from either Western or Ranger in regard to the Low claim.

On July 1, 1999, Western filed this lawsuit against Metropolitan and Ranger. In its complaint Western accused Metropolitan of tortious interference with its contractual relationship with Ranger (count 1), tortious interference with its business relationship with Ranger (count 2), tortious damage to its business reputation (count 3), and it also asserted an "estoppel" claim (count 4).[1] Metropolitan then moved to dismiss the action pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure. Western's objection to Metropolitan's motion to dismiss, however, included an affidavit from Western's owner that the motion justice considered in rendering her decision, thereby converting the motion to one for summary judgment. *St.*

1. Before the motion justice, Western conceded that count 3 was in essence a claim for

defamation and that count 4 actually was a request for injunctive relief.

*James Condominium Association v. Lokey,* 676 A.2d 1343 (R.I.1996).[2]

■ "This Court has recognized that 'when a trial justice considers evidence not incorporated in the final pleadings, a motion to dismiss under Rule 12(b)(6) is automatically transformed into one for summary judgment pursuant to Rule 56.'" *Lokey,* 676 A.2d at 1345 (quoting *Tangleridge Development Corp. v. Joslin,* 570 A.2d 1109, 1111 (R.I.1990) citing *Temple Sinai Suburban Reform Temple v. Richmond,* 112 R.I. 234, 239, 308 A.2d 508, 511 (1973)). "In such a case, however, the clear mandate of Rule 12(b)(6) requires that whenever a motion to dismiss is treated as a motion for summary judgment, 'all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.'" *Id.*

■ The motion justice alluded to the affidavit at oral argument and considered it in making her decision. She did not, however, explicitly state on the record that she was converting the motion to dismiss into a motion for summary judgment. "The plaintiff[ ], however, [was] not notified, as required by Rule 12(b)(6), that defendant['s] motion to dismiss was being converted into a motion for summary judgment." *Lokey,* 676 A.2d at 1345–46. Nevertheless, Western has not contended on appeal that application of the summary judgment standard to the dismissal motion was inappropriate. Thus, it has not suggested that the motion justice erred in failing to provide the required notice to all parties that she would be treating the dismissal motion as one for summary judg-

ment. Accordingly, we deem the parties to have waived any objections to the procedure followed when the court converted the dismissal motion into one for summary judgment.

■ In reviewing a grant of summary judgment this Court "examine[s] the pleadings and affidavits in the light most favorable to the nonmoving party to decide whether an issue of material fact exist[s] and whether the moving party [is] entitled to summary judgment as a matter of law." *Buonanno v. Colmar Belting Co.,* 733 A.2d 712, 715 (R.I.1999) (quoting *Textron, Inc. v. Aetna Casualty and Surety Co.,* 638 A.2d 537, 539 (R.I.1994)). "Summary judgment is proper when there is no ambiguity as a matter of law. * * * It is the burden of the party opposing a motion for summary judgment to assert facts that 'raise a genuine issue to be resolved.'" *Id.*

■ We conclude that Metropolitan's motion was properly granted as to counts 1 and 2 alleging tortious interference. "The basic elements of a claim based on a tortious interference with a contractual relationship are '(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his intentional interference; and (4) damages resulting therefrom.'" *Jolicoeur Furniture Co. v. Baldelli,* 653 A.2d 740, 752 (R.I.1995) (citing *Smith Development Corp. v. Bilow Enterprises, Inc.,* 112 R.I. 203, 211, 308 A.2d 477, 482 (1973)). "When the plaintiff establishes these four elements, the burden then shifts to the defendant to demonstrate a justification for the interference." *New England Multi–Unit Housing Laun-*

**2.** At the hearing, the motion justice referred to Western's affidavit and appeared to consider it in ruling on the motion. Although she did not specifically state that she was converting the motion to dismiss into a summary judgment motion, the order that entered in Metropolitan's favor did so state. The motion justice concluded that, under the alleged circumstances, Metropolitan had not violated any legal duty it owed to Western. She therefore granted Metropolitan's motion on all counts. The motion justice also entered judgment under Super.R.Civ.P. 54(b).

*dry Association v. Rhode Island Housing and Mortgage Finance Corp.,* 893 F.Supp. 1180, 1192 (D.R.I.1995) (citing *Smith,* 112 R.I. at 211, 308 A.2d at 482). A good faith assertion of a legally protected interest or claim is privileged and constitutes a defense to an action for tortious interference with contract. *See Belliveau Building Corp. v. O'Coin,* 763 A.2d 622, 629 (R.I. 2000). Such a privilege is only conditional because the plaintiff still may overcome the privilege by showing "actual malice" on the part of the alleged wrongdoer. *Id.* Metropolitan, citing *Belliveau,* argues on appeal that summary judgment was properly granted in this case because the result of the arbitration demonstrated that its efforts to gain reimbursement were justified. Western contends that Metropolitan was not justified in seeking reimbursement from Ranger because scientific seismographic evidence indicated that Western did not cause the damage to Low's house. The issue of justification, however, would be relevant only if Western had established a prima facie case under the above-stated elements for tortious interference with a contract.

 In reviewing Western's complaint, we note that it failed to allege that Metropolitan intentionally interfered with Western's contractual relationship with Ranger. The key language for both counts is: "As a result of its actions and inactions, including but not limited to its improper and unscientific investigation of the Low claim and its dealings with Plaintiff's insurer Ranger, defendant [Metropolitan] has harmed and continues to cause harm to plaintiff and is tortiously interfering with plaintiff's contractual relationship" (count 1) or "business relationship with Ranger" (count 2). This language appears to assert mere negligence on the part of Metropolitan, although the words "not limited to" might imply other alleged

wrongful conduct by Metropolitan. In any event, Western did not allege or submit any evidence to the motion justice suggesting that Metropolitan acted with the intent to interfere with Western's contractual relationship with Ranger—only that, in seeking reimbursement from Ranger, Metropolitan had harmed Western. To state a claim for intentional interference with contract when one insurer seeks reimbursement from another with respect to a settled claim, the insured must specifically allege that the insurer seeking reimbursement, (Metropolitan) intended to disrupt the contractual relationship of the insured (Western) and its insurer (Ranger) by submitting a reimbursement claim that lacked any colorable basis. Rather than making any allegations of intentional interference with contract, Western's complaint asserted mere negligent acts by Metropolitan that allegedly harmed Western. Western's argument on appeal also appears to focus on Metropolitan's negligence in not considering the scientific evidence gathered by Western. Even assuming, arguendo, that Metropolitan owed some duty to Western in these circumstances, negligent conduct on the part of Metropolitan, however, would not suffice to meet the standard of having committed tortious interference with contract. Indeed, absent allegations and proof of malicious prosecution of a groundless reimbursement claim, Metropolitan violated no duty owed to Western when it sought reimbursement for the amount it had paid to settle the Low claim.

 Count 3 concerned Western's claim for defamation. Western argues that Metropolitan's actions in pursuing its indemnification claim caused damage to its reputation, and made it more difficult and expensive for Western to procure blasting insurance. Metropolitan counters that its motion to dismiss was properly granted

because the favorable result obtained in the arbitration supports its claim that Western caused blasting damage to its insured and that its indemnification claim was not false or groundless. In addition, Metropolitan argues that its assertions against Western were privileged because it made them in connection with a "judicial proceeding." It suggests that the definition of a "judicial proceeding" should be construed broadly to include quasi-judicial proceedings such as arbitrations. We agree.

 "A defamation action requires a plaintiff to prove ' (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher;' and (d) damages, unless the statement is actionable irrespective of special harm." *Swerdlick v. Koch,* 721 A.2d 849, 859–60 (R.I.1998) (quoting *Healey v. New England Newspapers, Inc.,* 555 A.2d 321, 324 (R.I.1989)) (quoting *Lyons v. Rhode Island Public Employees Council 94,* 516 A.2d 1339, 1342 (R.I.1986)) (quoting Restatement (Second) Torts, § 558 at 155 (1977)). Metropolitan presented its allegations that Western caused the damage to Metropolitan's insured (Barbara Low) in the context of asserting a claim for reimbursement against Ranger and Western. To the extent that these assertions against Western were published in the context of an arbitration proceeding, we agree with those courts holding that such communications are privileged. *See, e.g., Bushell v. Caterpillar, Inc.,* 291 Ill.App.3d 559, 225 Ill.Dec. 623, 683 N.E.2d 1286, 1288 (1997); *Dunn v. Ladenburg Thalmann & Co.,* 259 A.D.2d 544, 686 N.Y.S.2d 471, 472 (N.Y.App.Div. 1999); 50 Am.Jur.2d *Libel and Slander* § 299 at 590 (1995).[3] Indeed, in ruling in favor of Metropolitan, the arbitrator decided this issue adversely to Western, albeit Western itself apparently did not participate in this proceeding. Nevertheless, for these purposes, Western was in privity with its insurer, Ranger, which participated in the arbitration and which represented its own and Western's interests therein. Indeed, Western not only was aware that the arbitration was proceeding, but it also supplied Ranger with the seismological evidence that, it asserts, proved conclusively its lack of responsibility for the blasting damage. Thus, if Western has any quarrel with the arbitration result or with Ranger's conduct in connection with defending Western against the Metropolitan claim, it should pursue such a dispute with its own insurer, Ranger.

Count 4 of Western's complaint, as it applied to Metropolitan, sought to enjoin Metropolitan from demanding reimbursement from Ranger for the Low claim. For the reasons previously stated, however, Western failed to demonstrate any entitlement to such relief. Thus, the motion justice properly granted summary judgment for Metropolitan on this count.

For these reasons, we affirm the summary judgment and deny Western's appeal.

---

**3.** In *O'Coin v. Woonsocket Institution Trust Co.,* 535 A.2d 1263, 1267 (R.I.1988), the Court held that statements made in judicial proceedings are privileged, and thus cannot form the basis for a defamation claim. Until this case, we have not had the opportunity to pass on the issue of whether statements made in connection with quasi-judicial proceedings such as arbitrations should be afforded the same protection. We now explicitly hold that, in accordance with the great weight of authority, statements made in quasi-judicial proceedings such as arbitrations shall be privileged against suits for defamation.