ESTATE OF Antonio A.
FONTES Jr., et al.

v.

John L. SALOMONE, D.D.S., et al.

No. 2002–91–Appeal.

Supreme Court of Rhode Island.

June 3, 2003.

Mark H. Grimm, Vincent D. Morgera, Providence, for plaintiff.

David W. Carroll, Michael Sarli, Providence, Francis A. Sarli, for defendant.

Present: WILLIAMS, C.J.,
FLANDERS, and GOLDBERG, JJ.

## OPINION

WILLIAMS, Chief Justice.

This appeal concerns the tragic death of Antonio A. Fontes, Jr. (Fontes or Mr. Fontes), who died because he did not receive proper medical care. The plaintiff, Leeann Fontes (plaintiff), filed a wrongful death action as the administratrix of Fontes's estate against defendants, John L. Salomone, D.D.S. (Dr. Salomone) and his employer Ocean State Endodontics, Inc. (OSE) (collectively referred to as defendants).[1] A jury found Dr. Salomone liable for the negligent medical care of Fontes. The defendants now appeal, arguing that the trial justice erred when he decided (1) not to grant their motion for judgment as a matter of law, and (2) not to instruct the jury on the affirmative defense of superseding intervening cause. We disagree with the defendants and deny and dismiss the appeal. The pertinent facts are as follows.

## I

### Facts and Travel

On December 12, 1995, Mr. Fontes went to Dr. Salomone's dental office for a root canal. Doctor Salomone prescribed penicillin but did not actually perform the root canal until December 27, 1995. On that day, Dr. Salomone performed the root canal on Fontes's number twenty tooth. On January 10, 1996, two weeks after the root canal, Mr. Fontes returned to Dr. Salo-

mone's office complaining that he was experiencing pain in the general area of the root canal. Doctor Salomone treated Fontes at that time, but Fontes returned five days later and complained that the symptoms had worsened. Doctor Salomone's partner Patrick Morganti, D.D.S. (Dr. Morganti) treated him and determined that the real problem was with tooth number eighteen. Doctor Morganti performed a root canal on tooth number eighteen.

On January 16, 1996, Fontes returned to Dr. Salomone's office complaining of continued pain and swelling on the left side of his mouth. Doctor Salomone prescribed more penicillin but Fontes reported the following day that he was now experiencing swelling on the right side of his mouth. On January 18, 1996, Fontes again returned to the office, complaining of increased swelling and difficulty swallowing. At this point, Dr. Salomone referred Fontes to Stephen T. Skoly, D.M.D. (Dr. Skoly), who is an oral surgeon.

Fontes saw Dr. Skoly for treatment at approximately 2 p.m. on January 18, 1996. Doctor Skoly diagnosed Fontes with impending Ludwig's angina[2] and stated in the discharge report that Fontes would have to be hospitalized immediately for surgical incision, drainage and eventual procurement of a safe airway to ventilate him. Doctor Skoly told Fontes that if he did not go to the hospital immediately, he would die before the end of the evening. Doctor Skoly added in his discharge report that "we'll meet him in a few minutes" at the hospital.

1. The plaintiff also sued James G. Fingleton, M.D. (Dr. Fingleton), John D. Prinscott, M.D. (Dr. Prinscott) and St. Joseph Health Services of Rhode Island (St. Joseph). Because the jury found only Dr. Salomone negligent, Dr. Fingelton, Dr. Prinscott and St. Joseph are not parties to this appeal.

2. "Ludwig's" angina consists of cellulitis that causes "painful swelling of the floor of the mouth, elevation of the tongue, dysphasia, dysphonia," and blockage of the airway. PDR Medical Dictionary 83 (1st ed.1995).

Fontes arrived at the hospital at 2:43 p.m. and underwent preadmission testing and evaluation until 3:50 p.m., when he was admitted to the holding area. At that time, Fontes was evaluated and prepared by the anesthesiologist, Dr. Prinscott, who performed a preanesthesia assessment and began administering intravenous fluids, which took approximately thirty minutes. Doctor Prinscott remained with Fontes in the holding area until Dr. Skoly arrived around 5:30 p.m., and Dr. Prinscott began administering anesthesia ten minutes later.

Before all the anesthesia could be administered and surgery could begin, Dr. Prinscott attempted to establish a secure airway by performing a fiberoptic nasal intubation[3] on Fontes in the operating room. After several attempts, Dr. Prinscott determined that swelling in Fontes's throat created an unsafe condition in which to perform a fiberoptic intubation. He decided that the better course of action would be to perform a tracheostomy.

At this time surgeon James G. Fingleton, M.D. (Dr. Fingleton), attempted to perform the tracheostomy. During this process, Fontes stopped breathing and Dr. Prinscott could not ventilate him despite numerous attempts. Fontes died at 6:54 p.m. The medical examiner stated that the cause of death was a right tension pneumothorax, a condition in which pressure in the pleural cavity causes the lung to collapse, thus compromising the blood flow to the heart. Doctor Skoly opined that Ludwig's angina was the cause of death and Dr. Fingleton listed the cause of death as prolonged hypoxia as a result of extended airway obstruction.

On November 6, 1997, plaintiff filed an action in Superior Court against Drs. Fingleton and Prinscott, and St. Joseph Health Services of Rhode Island, for wrongful death as a result of negligent medical care. The defendants were added as parties by an amended complaint dated July 2, 1998. On September 11, 2000, defendants moved to amend their answer to include the special defense that "the actions alleged by the plaintiff against [Drs. Prinscott and Fingleton] were the superseding intervening cause of [Fontes's] death." The trial justice granted defendants' motion to amend.

A jury trial began on May 15, 2001. During plaintiff's case-in-chief, defendants elicited, through cross-examination, evidence of Dr. Skoly's statements that (1) Fontes should go to the hospital immediately or he might be dead by the end of the evening, and (2) that Dr. Skoly would meet Fontes there in a few minutes. After plaintiff's case-in-chief was presented, defendants made a motion for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure. The defendants argued that because Dr. Skoly did not arrive at the hospital until several hours after Fontes arrived, he breached the duty of care he had established by promising to meet Fontes at the hospital in a few minutes. Therefore, according to defendants, Dr. Skoly's actions were negligent and constituted a superseding intervening cause that relieved defendants of liability. The plaintiff objected, arguing that there was insufficient evidence to present this theory. The trial justice denied defendants' Rule 50 motion.

During defendants' case-in-chief the defendants elicited the same information about Dr. Skoly's words and actions from David Brewster, M.D., and Dr. Fingleton based on their review of the records. Fur-

---

**3.** A fiberoptic nasal intubation is a process by which Dr. Prinscott would insert a fiberoptic scope through the nose and past Fontes's vocal cords into the trachea, where the tube would be left in place as a secure airway to administer oxygen during the operation.

thermore, defendants attempted to solicit from Dr. Fingelton whether Dr. Skoly had a duty to get to the hospital within a few minutes of treating Fontes. The plaintiff contended that there was insufficient evidence to establish Dr. Skoly's contribution to the cause of death. The trial justice sustained the objection. The defendants did not attempt to obtain or present any further testimony about Dr. Skoly's role in Fontes's death.

At the close of all the evidence, defendants renewed their Rule 50 motion, again alleging that Dr. Skoly's actions constituted a superseding intervening cause. The plaintiff objected for the same reasons previously stated. The defendants also argued that the jury should be allowed to consider whether Dr. Skoly's role in this case constituted a superseding intervening cause.

The trial justice denied defendants' Rule 50 motion and their requested jury instruction. Specifically, the trial justice determined that expert testimony was absolutely necessary to establish causation in a medical malpractice case such as this. Because defendants presented no such testimony about the alleged superseding intervening negligence of Dr. Skoly, judgment as a matter of law was inappropriate, as was the jury instruction permitting an inference that Dr. Skoly's conduct constituted a superseding intervening cause. The jury found that Dr. Salomone was negligent in his treatment of Mr. Fontes and that his negligence was the proximate cause of Fontes's death. Consequently, the jury awarded plaintiff $500,000. The jury also found that Dr. Prinscott and Dr. Fingleton were not liable. The defendants timely appealed.

On appeal, defendants argue that the trial justice erred in (1) denying their Rule 50 motion, and (2) refusing to instruct the jury that they could infer that Dr. Skoly

was a superseding intervening cause. We address each argument *seriatim.*

## II

### Denial of the Defendants' Rule 50 Motion

The defendants contend that the trial justice should have granted their Rule 50 motion to dismiss plaintiff's case because the evidence established that Dr. Skoly's actions were a superseding intervening cause that relieved them of liability for Fontes's death. We disagree.

██ When we review a decision on a judgment as a matter of law, we, like the trial justice, examine:

"the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party. * * * If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination." *Filippi v. Filippi,* 818 A.2d 608, 617 (R.I.2003) (quoting *Marketing Design Source, Inc. v. Pranda North America, Inc.,* 799 A.2d 267, 271 (R.I.2002)).

"When there are no relevant factual issues and 'defendant is entitled to judgment as a matter of law, then the trial justice should grant the motion and dismiss the complaint.'" *Id.*

██ To establish that Dr. Skoly's conduct was a superseding intervening cause relieving defendants of liability, defendants would have to demonstrate that Dr. Skoly was negligent, that his negligence was a proximate cause of Fontes's death and that

Dr. Skoly's negligence was not a reasonably foreseeable consequence of defendants' original negligence. *See Pantalone v. Advanced Energy Delivery Systems, Inc.*, 694 A.2d 1213, 1215–16 (R.I.1997). To meet that burden defendants should have introduced expert evidence that (1) Dr. Skoly's delay in treating Fontes deviated from the standard of care of a reasonably prudent oral surgeon, *see Sheeley v. Memorial Hospital*, 710 A.2d 161, 164 (R.I.1998), and (2) that Dr. Skoly's delay was the proximate cause of the death. *See Evans v. Liguori*, 118 R.I. 389, 396–97, 374 A.2d 774, 777 (1977).[4]

The defendants did not present any expert testimony concerning the appropriate standard of care for Dr. Skoly, nor did they offer expert testimony demonstrating that Dr. Skoly's delay was a proximate cause of Fontes's death. Viewing the facts in a light most favorable to plaintiff, and given the fact that defendants could not meet the evidentiary requirements for the defense of a superseding intervening cause, the trial justice did not err in denying defendants' Rule 50 motion.

We note that it was not until after plaintiff presented her case-in-chief that defendants provided notice that it would argue that Dr. Skoly's actions constituted a superseding intervening cause. This is a clear instance of trial by ambush. Although we do not countenance defendants' trial strategy, we need not address the issue of whether the pleadings should have been amended to include this defense because, even if the pleadings were amended to include the defense that Dr. Skoly's actions constituted an intervening superseding act of negligence, defendants failed to properly prove this with the requisite expert testimony.

## III

### Jury Instructions

The defendants also argue that the trial justice erred by not issuing jury instructions on superseding intervening cause. We disagree.

"[T]he charge given to the jury must be applicable to the facts that have been adduced in evidence and that a request for instructions is properly denied when there is no basis for such instruction in the evidence." *Brodeur v. Desrosiers*, 505 A.2d 418, 422 (R.I.1986). As we state above, the defendants failed to present the requisite expert testimony to establish that Dr. Skoly's actions were negligent and that such negligence was the proximate cause of Fontes's death. Therefore, there was no basis for an instruction to the jurors that they could properly consider whether Dr. Skoly's actions constituted a superseding intervening cause. Accordingly, the trial justice did not err by refusing to issue the defendants' proposed instruction.

### Conclusion

For the reasons set out above, the defendants' appeal is denied and dismissed.

---

4. The defendants rely on *Wilkinson v. Vesey*, 110 R.I. 606, 295 A.2d 676 (1972), for the proposition that Dr. Skoly's deposition testimony and his statements on the discharge report can be substituted for the required expert testimony on standard of care and causation. This reliance is misplaced. In *Wilkinson*, this Court determined that the requisite standard of care in a medical malpractice case could be adduced by invoking the adverse witness statute. *See id.* at 614, 295 A.2d at 682. The adverse witness statute, formerly codified at G.L.1956 § 9–17–14, was repealed in 1987 (P.L.1987, ch. 381, § 4) and replaced by the Rhode Island Rules of Evidence. Even if that statute were still in effect, however, defendants never called Dr. Skoly to testify as an adverse witness. Therefore defendants would not have been able to invoke that statute to present Dr. Skoly's deposition testimony and discharge report in lieu of expert testimony.

The judgment of the Superior Court is affirmed. The papers of the case may be returned to the Superior Court.

Justice FLAHERTY did not participate.