Jerry F. IMS

v.

TOWN OF PORTSMOUTH et al.

Nos. 2009–236–Appeal, 2009–237–Appeal, 2009–238–Appeal, 2009–239–Appeal.

Supreme Court of Rhode Island.

Dec. 9, 2011.

Michael F. Drywa, Jr., Esq., for Plaintiff.

Anthony F. DeMarco, Esq., Providence, for Defendant Town of Portsmouth.

Christopher S. Gontarz, Esq., Middletown, for Defendants Seale & Vierra.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on September 28, 2011, on appeal by the plaintiff, Jerry F. Ims (Ims or plaintiff), from a Superior Court judgment in favor of the defendants, the Town of Portsmouth (town), its then chief of police, Dennis Seale (Chief Seale), and now-retired Lieutenant Manuel Vierra (Lt. Vierra), on all counts in the complaint.[1] The plaintiff, a former Portsmouth police officer, filed an action alleging malicious prosecution, tortious interference with contractual relations, violation of the Rhode Island Whistleblowers' Protection Act (G.L. 1956 chapter 50 of title 28) (Whistleblower claim), and civil conspiracy arising from an investigation into the plaintiff's conduct during an officer training exercise. The trial justice granted judgment as a matter of law in favor of the defendants on the claims for malicious prosecution and tortious interference with contractual relations. The plaintiff contends that this was error; he also assigns error to certain evidentiary rulings at trial. Chief Seale and Lt. Vierra filed a cross-appeal asserting that their counterclaim against Ims alleging defamation should not have been dismissed before trial.[2] For the reasons set forth below, we affirm in part and vacate in part.

1. The case before us consists of four separate docket numbers. In the first docket (No. 2009–236–A), plaintiff appeals from a judgment entered in favor of defendants on all counts. The second docket (No. 2009–237–A) is a cross-appeal filed by Chief Seale and Lt. Vierra, individually, claiming that the trial justice erred in dismissing their counterclaim regarding defamatory statements made in plaintiff's letter of claim to the town council. Additionally, the town filed two cross-appeals, which were docketed separately; the first (No. 2009–238–A) alleges that the trial justice should have granted its motion for summary judgment on all counts. The town's second cross-appeal (No. 2009–239–A) contends that the trial justice erred in not granting judgment as a matter of law on the Whistleblower claim and the civil conspiracy claim. As all four separately docketed claims related to the same case, they were consolidated for purposes of this appeal.

2. The town also filed two cross-appeals contending that the trial justice should have granted the town's motion for summary judgment on all counts and that the trial justice

## Facts and Travel

The plaintiff served as a Portsmouth police officer from July 6, 1987, until his retirement on February 26, 2004. The plaintiff contends that he was disliked by several of his fellow officers because he refused to provide them with preferential treatment for what he considered to be violations of the law, but instead he reported them for wrongdoing. At trial and in his brief to this Court, plaintiff illustrated several instances in which he reported police officers or relatives of police officers for various violations, including speeding.[3] The plaintiff asserts that as a consequence, Chief Seale, Lt. Vierra, and other members of the department engaged in malicious conduct towards him.

The plaintiff alleges that the ill will harbored against him by Chief Seale and Lt. Vierra manifested itself most prominently after an incident during a training exercise for Portsmouth police officers on November 26, 2001. The training exercise centered on the issue of the appropriate use of force during an arrest and involved a role-playing exercise with Ims, Patrolman Scott Travers (Ptlm. Travers), and Patrolman Steve Alfonso acting as police officers— and with Officer William Burns (Officer W. Burns) portraying the perpetrator. It did not go well. After resisting the officers' attempts to "arrest" him, Officer W. Burns began struggling with plaintiff. Patrolman Travers fired several "simunition" rounds[4] at Officer W. Burns's back and leg in an effort to apprehend him. While struggling with plaintiff, Officer W. Burns exclaimed that he had been cut. The training exercise ended, and Officer W. Burns, who was

bleeding, was taken to the hospital and was treated for a one-centimeter laceration on his head.

The next day, Officer W. Burns spoke with Lt. Vierra about filing assault charges against plaintiff, contending that during the exercise plaintiff intentionally struck him five times with the butt of his firearm. Based on this allegation, Chief Seale immediately ordered Lt. Vierra to commence an investigation into the training incident, and plaintiff was placed on administrative leave with pay and benefits. The plaintiff believed the investigation against him was initiated by Officer W. Burns, Chief Seale, and Lt. Vierra in retaliation for the fact that plaintiff had reported Officer W. Burns's brother, Officer Stephen Burns (Officer S. Burns), for speeding.

Lieutenant Vierra began his investigation by gathering statements from Officer W. Burns and Ptlm. Travers. However, before he obtained plaintiff's account of the incident, Chief Seale directed Lt. Vierra to suspend the internal investigation while the state police conducted a separate inquiry into the incident. The state police investigation eventually culminated in a grand jury proceeding. In January 2002, the grand jury declined to indict plaintiff for assault with a dangerous weapon or simple assault. Thereafter, Lt. Vierra resumed his departmental investigation; he received a statement submitted by plaintiff. Lieutenant Vierra's investigative report, composed of witness statements and his findings, concluded that plaintiff violated the department's use of force policy during the training exercise.

---

erred by not granting judgment as a matter of law for the Whistleblower and civil conspiracy claims.

**3.** Ims also reported members of the department for driving while intoxicated and for smoking marijuana.

**4.** The officers used guns converted to fire something similar to paint balls as simulated ammunition; the "paint balls" are referred to as "simunition."

By letter dated January 28, 2002, Chief Seale notified plaintiff that if he wished to return to his position as a police officer he must undergo a psychological examination and, if he refused, he would be suspended without pay for ninety days. The plaintiff declined to undergo the examination and notified the department that he would invoke the provisions of the Law Enforcement Officers' Bill of Rights (LEOBOR) with respect to the proposed discipline. *See* G.L.1956 § 42–28.6–4. The LEOBOR hearing board ruled that Officer W. Burns's injury resulted from a training accident and that plaintiff was not at fault. The plaintiff was cleared to return to work and did so on August 12, 2002.[5] He retired in February 2004, and this litigation ensued.

On December 10, 2004, plaintiff, in accordance with G.L.1956 § 45–15–5, notified the Portsmouth Town Council of his forthcoming suit and all anticipated claims therein.[6] Significantly, this notice consisted of eleven pages of accusations, setting forth in excruciating detail the perceived wrongs allegedly endured by plaintiff. On January 11, 2005, plaintiff filed this action against the town and against Chief Seale and Lt. Vierra individually and in their official capacities, seeking damages for malicious prosecution, tortious interference with contractual relations, civil conspiracy, and violation of the Rhode Island Whistleblowers' Protection Act.

Chief Seale and Lt. Vierra, in their individual capacities, filed a counterclaim alleging defamation arising from plaintiff's December 10, 2004 notice to the Portsmouth Town Council. The plaintiff filed a motion to dismiss under Rule 12(b)(6) of the Superior Court Rules of Civil Procedure on the grounds that the allegations in the notice of claim were privileged, as having been made in connection with a judicial proceeding. On April 4, 2005, the motion justice, finding that plaintiff was statutorily required to provide the town council with notice of his forthcoming suit, granted the motion to dismiss, concluding that an absolute privilege existed with respect to the contents of the notice. The individual defendants appeal the dismissal of their counterclaim, and they contend that the motion justice improperly found that plaintiff's letter was entitled to absolute privilege.

The case was reached for trial in March 2009, at which point the trial justice heard and decided several pretrial motions *in limine*. The plaintiff sought to introduce the testimony of Officer John Huppee (Officer Huppee) from the LEOBOR hearing because Officer Huppee was in Iraq and unavailable at trial. The trial justice refused to allow the former testimony based on a finding that the issues that were subject to cross-examination at the LEOBOR hearing were not sufficiently similar to the issues at trial. The plaintiff also

---

**5.** The record discloses that plaintiff underwent shoulder surgery while the decision of the LEOBOR hearing board was pending and did not return to work until August 12, 2002.

**6.** General Laws 1956 § 45–15–5 requires:
"Every person who has any money due him or her from any town or city, or any claim or demand against any town or city, for any matter, cause, or thing whatsoever, shall take the following method to obtain what is due: The person shall present to the town council of the town, or to the city council of

the city, a particular account of that person's claim, debt, damages, or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not made to him or her by the town or city treasurer of the town or city within forty (40) days after the presentment of the claim, debt, damages, or demand, the person may commence his or her action against the treasurer for the recovery of the complaint."

conceded at the pretrial hearing that the only evidence he intended to introduce to support the Whistleblower claim was the report that he made to Chief Seale about Officer S. Burns speeding.

The plaintiff testified at trial that he was disliked by his fellow police officers. He described several instances in which he reported colleagues for violating the law, and he alleged that his superiors did not pursue his reports. Ims also testified that he believed Officer W. Burns was injured as a result of an accident during the training exercise. On cross-examination, plaintiff testified that he did not know how Officer W. Burns got injured, but that he did not assault him.[7]

Included in his claims for damages, Ims alleged that he lost the opportunity to earn overtime and detail pay while he was on administrative leave. The defendants sought to exclude this testimony based on their contention that plaintiff did not adequately respond to interrogatories relating to the amount of money allegedly lost while on administrative leave. The trial justice agreed and refused to allow this evidence.

With respect to his claim for tortious interference with contractual relations, plaintiff testified that he was employed by the Town of Portsmouth and that there was a collective bargaining agreement (CBA) between the union and the town from which all his employment rights emanated. The plaintiff acknowledged that he did not have a formal contractual relationship with the town apart from the CBA. At the close of plaintiff's case, the trial justice granted judgment as a matter of law on the claim for tortious interference with

contractual relations. The trial justice noted that "there is not one piece of physical evidence, documentary evidence, that in any way would suggest that there was a separate contract existing between Mr. Ims and the Town of Portsmouth Police Department."

Additionally, defendants moved for judgment as a matter of law on the count alleging malicious prosecution, and they argued that malicious prosecution must fail because no criminal proceeding or criminal prosecution was instituted in this case. The defendants argued that plaintiff was not indicted or arrested for a criminal offense, but merely was investigated for possible criminal conduct. The trial justice agreed and concluded that no criminal prosecution or proceeding had been initiated against plaintiff. The trial justice also found that plaintiff had failed to show that he suffered the requisite special injury necessary to support a claim for malicious prosecution arising from a civil action, specifically, the LEOBOR proceeding. Thus, there was no evidence to support the count of malicious prosecution based on either a criminal prosecution or civil action. The trial justice also denied defendants' motion for judgment as a matter of law on the Whistleblower count.

On March 27, 2009, the jury returned a verdict for defendants on the remaining claims—civil conspiracy and the alleged violation of the Whistleblower Act. The plaintiff did not file a motion for a new trial, and final judgment was entered in favor of defendants on March 31, 2009. Ims timely appealed. Chief Seale and Lt. Vierra filed a cross-appeal on April 14, 2009.[8]

---

7. Ims acknowledged, however, that as he pulled Officer W. Burns down during the exercise, he dropped his flashlight, implying that it was the flashlight that caused the injury.

8. The town filed its initial cross-appeal on April 16, 2009, and its second cross-appeal on April 21, 2009. In view of our decision in this case, we need not reach the town's cross-appeals.

## I

### Judgment as a Matter of Law

 The plaintiff argues that the trial justice erred in granting judgment as a matter of law on the counts of malicious prosecution and tortious interference with contractual relations. "Our review of a trial justice's decision on a motion for judgment as a matter of law is *de novo.*" *Medeiros v. Sitrin*, 984 A.2d 620, 625 (R.I. 2009) (citing *Gianquitti v. Atwood Medical Associates, Ltd.*, 973 A.2d 580, 589 (R.I. 2009)). "The standard for granting a motion for judgment as a matter of law is the same as that applicable to its precursor, a motion for a directed verdict." *Mellor v. O'Connor*, 712 A.2d 375, 377 (R.I.1998). "This Court, like the trial justice, will examine 'the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw from the record all reasonable inferences that support the position of the nonmoving party. * * * If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination.'" *Oliveira v. Jacobson*, 846 A.2d 822, 829 (R.I.2004) (quoting *Estate of Fontes v. Salomone*, 824 A.2d 433, 437 (R.I.2003)).

### A. Malicious Prosecution

 The plaintiff alleges that the trial justice committed a "significant and egregious error" when he granted judgment as a matter of law in favor of defendants on the count for malicious prosecution. This Court has defined malicious prosecution "as a suit for damages resulting from a prior criminal or civil legal proceeding that was instituted maliciously and without probable cause, and that terminated unsuccessfully for the plaintiff therein."

*Clyne v. Doyle*, 740 A.2d 781, 782 (R.I. 1999) (quoting *Hillside Associates v. Stravato*, 642 A.2d 664, 667 (R.I.1994)); *see also Hoffman v. Davenport–Metcalf,* 851 A.2d 1083, 1091 (R.I.2004); *Toste Farm Corp. v. Hadbury, Inc.*, 798 A.2d 901, 907 (R.I.2002). Furthermore, "an action for malicious prosecution based on a prior civil suit may be maintained only where it is established that the prior suit resulted in a special injury to the defendant in that suit." *Ring v. Ring*, 102 R.I. 112, 114–15, 228 A.2d 582, 584 (1967); *see also Hoffman*, 851 A.2d at 1091; *Toste Farm Corp.*, 798 A.2d at 907. Although the tort of malicious prosecution long has been recognized in this jurisdiction, it is nevertheless a disfavored cause of action because it "tend[s] to deter the prosecution of crimes and/or to chill free access to the courts." *Brough v. Foley*, 572 A.2d 63, 66 (R.I. 1990); *see also Hill v. Rhode Island State Employees' Retirement Board*, 935 A.2d 608, 613 (R.I.2007); *Henshaw v. Doherty*, 881 A.2d 909, 915 n. 5 (R.I.2005); *Clyne*, 740 A.2d at 782; *Soares v. Ann & Hope of Rhode Island, Inc.*, 637 A.2d 339, 345 (R.I. 1994); *Solitro v. Moffatt*, 523 A.2d 858, 862 (R.I.1987). In the case before the Court, plaintiff maintains that he was the subject of a prior criminal prosecution based on the grand jury investigation and a prior civil action based on the LEOBOR hearing.

 The plaintiff argues that the trial justice erroneously found that the state police investigation and ensuing grand jury proceeding were not criminal proceedings for purposes of establishing the tort of malicious prosecution. The plaintiff is incorrect, and he has misconstrued the role of the common-law grand jury in Rhode Island. The purpose of the grand jury is to serve the "dual function of determining if there is probable cause to believe that a crime has been committed and of protect-

ing citizens against unfounded criminal prosecutions." *In re Doe,* 717 A.2d 1129, 1134 (R.I.1998) (quoting *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 423, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983)). The grand jury has developed primarily as an inquisitorial institution, as opposed to one of an adversarial nature. 1 *Grand Jury Law and Practice,* § 4:19 at 4–100, 4–102 (2d ed. 2008). "[C]oncern for the grand jury's dual function underlies the 'long-established policy that maintains the secrecy of the grand jury proceedings.'" *Doe,* 717 A.2d at 1134 (quoting *Sells Engineering,* 463 U.S. at 424, 103 S.Ct. 3133). The investigative role of the grand jury and the secrecy attached to the proceedings make clear that a grand jury investigation is not a criminal prosecution; it is an inquiry designed to determine whether or not a criminal prosecution is warranted based on the evidence presented. *See* 1 *Grand Jury Law and Practice,* § 4:19 at 4–102. This Court has declared that a grand jury proceeding is not a trial. *See State v. Acquisto,* 463 A.2d 122, 127 (R.I. 1983) ("In Rhode Island it has traditionally been the function of the grand jury to decide whether the evidence presented to it, unexplained and uncontradicted, gives rise to a sufficient quantum of proof to warrant the return of a formal accusation of crime. A grand jury proceeding is not a trial and is not bound by the rules of evidence that apply to an adversary hearing.").

■ Moreover, with respect to the nature of a proceeding that may give rise to a malicious prosecution, the Restatement (Second) *Torts* § 654 at 411 (1977) provides:

> "(1) The term 'criminal proceedings' includes any proceeding in which a government seeks to prosecute a person for an offense and to impose upon him a penalty of a criminal character.

> "(2) Criminal proceedings are instituted when

>> "(a) process is issued for the purpose of bringing the person accused of a criminal offense before an official or tribunal whose function is to determine whether he is guilty of the offense charged, or whether he shall be held for later determination of his guilt or innocence; or

>> "(b) without the issuance of process an indictment is returned or an information filed against him; or

>> "(c) he is lawfully arrested on a criminal charge."

Thus, in the absence of an indictment, information, or arrest, there is no criminal prosecution. This Court similarly noted that a party may not properly maintain an action for malicious prosecution if that party has not been arrested, served with process, or indicted by a grand jury in the underlying criminal action. *Mitchell v. Donanski,* 28 R.I. 94, 96, 97, 65 A. 611, 612–13 (1906).

The plaintiff's reliance on *Soares,* 637 A.2d at 345, is misplaced. Unlike the plaintiff in *Soares,* who was apprehended and prosecuted for shop lifting, Ims was never arrested, indicted, or arraigned. *See id.* The grand jury proceeding in this case was instituted in order for the grand jury to determine whether there was probable cause to return an indictment on an alleged assault crime. It is undisputed that the grand jury declined to indict Ims and no prosecution was undertaken against him. We therefore conclude that the grand jury investigation was not a criminal proceeding, and the trial justice properly granted judgment as a matter of law in favor of defendants on the malicious prosecution count.

Alternatively, plaintiff argued to the trial justice, and again to this Court, that the

prosecution element of the tort of malicious prosecution was satisfied by the LEOBOR hearing because, he contends, a disciplinary proceeding conducted in accordance with the provisions of the LEOBOR statute is a civil action sufficient to support a claim of malicious prosecution. The defendants argued and the trial justice agreed that in order to establish a claim for malicious prosecution arising from a civil proceeding, the party must prove a special injury and, that in the context of this case, Ims failed to do so.

In *Ring*, 102 R.I. at 114, 228 A.2d at 583–84, this Court declared that the special injury requisite to support a claim for malicious prosecution based on a prior civil suit must involve an interference with the property of the person bringing suit or other special damage. *Id.* at 114, 228 A.2d at 583. The special injury must be of a nature that does not ordinarily arise as a result of the civil litigation, such as attorneys' fees, costs, or inconvenience. *Id.* at 114–15, 228 A.2d at 584. We specifically rejected the argument that injury to one's reputation or the expense of defending the underlying suit constituted the type of special injury necessary to support the claim. *Id.* at 114, 228 A.2d at 584.

The trial justice correctly noted that since this Court's decision in *Ring*, much has changed with respect to police officer discipline in the wake of the LEOBOR. The trial justice also found that there is "a substantial distinction between suspension from duty and someone being placed on administrative leave." The trial justice was not persuaded that an administrative suspension was the type of special injury required to support a claim for mali-

cious prosecution, absent other definitive, qualitative special injuries. He concluded that the special injuries that must be proven to support a claim for malicious prosecution may not be based on "rank speculation." We agree.

This Court has adopted the "English Rule" with respect to the requirement of proof of special damages in actions for malicious prosecution. *Palazzo v. Alves*, 944 A.2d 144, 154 (R.I.2008). Under the rule, an "action for malicious prosecution requires, in the absence of a person's arrest or seizure of his or her property, a showing of 'special injury' beyond the trouble, cost and other consequences normally associated with defending oneself against an unfounded legal charge." *Id.* (quoting *Jacques v. McLaughlin*, 121 R.I. 525, 525, 401 A.2d 430, 431 (1979)). Because plaintiff was neither arrested nor indicted, it was incumbent upon him to demonstrate that he suffered a special injury beyond the ordinary expenses of defending against the department's charges. The plaintiff failed to do so. Although plaintiff argues that the trial justice erroneously excluded evidence about his lost opportunity to earn overtime pay and compensation for police details based on a discovery violation, we are not satisfied that these speculative losses amount to a seizure of plaintiff's property or qualify as the type of special injury sufficient to establish the tort of malicious prosecution.[9] Nor are we persuaded that an administrative suspension with full salary and benefits, as contemplated by the LEOBOR, gives rise to a special injury in the context of malicious prosecution.

---

9. The trial justice concluded that plaintiff failed to sufficiently answer or supplement his answers to defendants' interrogatory, which requested an itemization of all damages plaintiff allegedly sustained. *See* Rule 33(c) of the Superior Court Rules of Civil Procedure (imposing a continuing duty on the party furnishing answers to interrogatories to amend or supplement any answers that are incomplete or incorrect).

The plaintiff points to our holding in *Ring,* 102 R.I. at 115, 228 A.2d at 584, in which we quoted with approval *Wetmore v. Mellinger,* 64 Iowa 741, 18 N.W. 870, 871 (1884), for the proposition that a special injury is established when the action "is so prosecuted as to entail unusual hardship upon the defendant, and subject him to special loss of property or of reputation * * *," including "the preferment of charges against a police officer which results in his suspension from duty." *Ring,* 102 R.I. at 115, 228 A.2d at 584. Although plaintiff greatly relies on this portion of our holding in *Ring,* we are of the opinion that an administrative suspension in accordance with the LEOBOR does not entail unusual hardship, special loss of property, or loss of reputation under *Ring.*

 Moreover, we are not satisfied that a proceeding under the LEOBOR qualifies as a civil action for purposes of a claim for malicious prosecution. The LEOBOR is remedial in nature. It is " 'the exclusive remedy for permanently appointed law enforcement officers who are under investigation and subject to discipline * * *' for noncriminal allegations of misconduct." *Providence Lodge No. 3, Fraternal Order of Police v. Providence External Review Authority,* 951 A.2d 497, 502 (R.I.2008) (quoting *In re Sabetta,* 661 A.2d 80, 83 (R.I.1995)). This Court has declared that the LEOBOR "was enacted to protect police officers from infringements of their rights in the course of investigations into their alleged improper conduct." *In re Denisewich,* 643 A.2d 1194, 1196 (R.I.1994). "The hearing provisions of the LEOBOR refer to circumstances in which permanent, full-time police officers are *under investigation* or *interrogation* by department officials and accordingly are protected by its terms." *International Brotherhood of Police Officers, Local 569 v. City of East Providence,* 989 A.2d 106, 108–09 (R.I. 2010). Officers who are subject to a departmental investigation or a disciplinary proceeding are entitled to a hearing before a hearing committee authorized to entertain the complaint. *Id.* at 109. When convened in accordance with the provisions of the LEOBOR, a hearing committee is vested with "broad powers to investigate allegations of police misconduct, hold hearings, and issue decisions that affect the individual rights of permanently appointed law enforcement officers." *In re Denisewich,* 643 A.2d at 1197 (citing *Lynch v. King,* 120 R.I. 868, 878, 391 A.2d 117, 123 (1978)). Thus, although adjudicatory in nature, a LEOBOR proceeding is designed to protect the rights of the accused officer who, according to the statute, is "the aggrieved law enforcement officer." Section 42–28.6–1(2)(i). We are not persuaded that an officer who elects to proceed with a hearing in accordance with the LEOBOR and prevails has suffered the type of special injury that is contemplated in the tort of malicious prosecution.

Accordingly, we are satisfied that the trial justice did not err in granting defendants' motion for judgment as a matter of law on the claim of malicious prosecution.

### B. Tortious Interference with Contractual Relations

 The plaintiff argues that the trial justice erred in granting judgment as a matter of law on the claim of tortious interference with contractual relations based on plaintiff's failure to present any evidence of an existing employment contract between plaintiff and the town. This Court has recognized that in order to prevail on a claim of tortious interference with contractual relations, a plaintiff must demonstrate "(1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) his [or her] intentional

interference; and (4) damages resulting therefrom." *Tidewater Realty, LLC v. State,* 942 A.2d 986, 993 (R.I.2008) (quoting *Smith Development Corp. v. Bilow Enterprises, Inc.,* 112 R.I. 203, 211, 308 A.2d 477, 482 (1973)). The existence of a contract is a question of law that this Court reviews *de novo. Nonnenmacher v. City of Warwick,* 722 A.2d 1199, 1202 (R.I. 1999). Additionally, plaintiff must show that the interference is not only intentional, but also *"improper." Tidewater,* 942 A.2d at 993 (citing *Avilla v. Newport Grand Jai Alai, LLC,* 935 A.2d 91, 98 (R.I.2007)).

The trial justice determined, based on the evidence presented, that plaintiff failed to prove that a contract existed between plaintiff and the town. The plaintiff admitted that as a town police officer, he was subject to a CBA and had no separate employment contract with the town. He argued, however, that he had an implicit contract with the town because he received payment for services rendered to the town. The trial justice disagreed with this argument and concluded that plaintiff failed to prove the existence of a contract. Based on the record in this case, we are of the opinion that plaintiff failed to establish the elements necessary to support his claim. Although plaintiff clearly had an employment relationship with the town, he failed to demonstrate the existence of an employment contract. Thus, his claim for tortious interference with contractual relations also must fail.

Furthermore, our careful review of the record in this case leads us to conclude that plaintiff failed to show how defendants tortiously interfered with his job. The plaintiff advanced no evidence to establish that defendants acted improperly or tortiously in their handling of the investigation. The record discloses that Lt. Vierra investigated the allegations, inter-

viewed the officers who witnessed the training incident, and prepared a report. Chief Seale, acting within his authority as chief of police, as constrained by the LEOBOR, referred the investigation to the state police for an independent review and then the case was presented to a grand jury to determine whether probable cause existed. After the grand jury refused to indict plaintiff, Lt. Vierra resumed his internal investigation into whether plaintiff had violated departmental policies. Upon receipt of Lt. Vierra's report, concluding that Ims violated the use of force policy, Chief Seale directed plaintiff to undergo a psychological examination, or face discipline. The evidence submitted by plaintiff in no way established that Chief Seale or Lt. Vierra acted improperly or tortiously in this case. We conclude that the trial justice properly granted judgment as a matter of law in favor of defendants on the claim of tortious interference with contractual relations.

## II

### Evidentiary Rulings

■■■■ The plaintiff also argues that the trial justice made several evidentiary errors by excluding witness testimony and evidence. It is well established that the "admissibility of evidence is a question addressed to the sound discretion of the trial justice and will not be disturbed on appeal absent a clear abuse of that discretion." *State v. Mann,* 889 A.2d 164, 166 (R.I. 2005) (quoting *State v. Lynch,* 854 A.2d 1022, 1031 (R.I.2004)). Furthermore, "[w]e are disinclined to perceive an abuse of discretion so long as the record contains 'some grounds for supporting the trial justice's decision * * *.' " *State v. Pitts,* 990 A.2d 185, 189–90 (R.I.2010) (quoting *State v. Grullon,* 984 A.2d 46, 53 (R.I.2009)).

The plaintiff alleges that the trial justice erred by: (1) precluding the LEOBOR

hearing testimony of Officer Huppee; (2) barring plaintiff's testimony on damages incurred from lost overtime and detail work based on a discovery violation; (3) precluding the introduction of evidence that Portsmouth officers who previously had engaged in misconduct were not subjected to the same degree of punishment as plaintiff; and (4) preventing plaintiff from offering an opinion that defined the term "probable cause."

Because each of these alleged errors pertain to the claim of malicious prosecution, we shall not labor long in addressing them. In light of our earlier determination that the trial justice properly granted judgment as a matter of law in favor of defendants on the malicious prosecution claim, these issues are moot.

■ The plaintiff also attacks the decision of the trial justice to exclude evidence of reputation damages, which Ims contends he suffered as a result of the LEOBOR hearing. Although this argument is not related to a specific count in the complaint, we presume it concerns the claim for malicious prosecution arising from the LEOBOR hearing. We deem this issue moot.

■ We also note that damage to one's reputation does not qualify as the special injury to support a claim for malicious prosecution. In *Ring*, 102 R.I. at 115, 228 A.2d at 584, this Court rejected the plaintiff's contention that she suffered special injury when she was held up to public scorn and ridicule by the allegations that she was living with a common-law husband. Thus, we are of the opinion that even if Ims had proven the elements of malicious prosecution, evidence of any damage to his reputation does not, under these circumstances, satisfy the special injury component of the tort.

## III

### The Defendants' Cross–Appeal

### Qualified Privilege

We now turn our attention to the final and pivotal issue in this case, which we deem to be an issue of first impression. In their cross-appeal, Chief Seale and Lt. Vierra contend that the motion justice erred by granting plaintiff's Rule 12(b)(6) motion to dismiss their counterclaim for defamation arising from the inflammatory demand letter that plaintiff submitted to the Portsmouth Town Council in accordance with § 45–15–5. In his motion to dismiss, plaintiff contended that the allegations set forth in his eleven-page letter to the town council were protected by an absolute privilege because the demand letter was part of a judicial proceeding. The motion justice agreed and declared that the statements were absolutely privileged because plaintiff "had no choice under the statute but to file a [notice] setting forth what he believes his claim to be against his superiors at the police department."

This Court has recognized that certain communications in connection with judicial proceedings are immune from suit because they enjoy an absolute privilege. *Vieira v. Meredith*, 84 R.I. 299, 301, 123 A.2d 743, 744 (1956) (adopting a general rule that "libelous matter in pleadings filed in judicial proceedings are absolutely privileged where the statements are material, pertinent or relevant to the issues therein"); *see also O'Coin v. Woonsocket Institution Trust Co.*, 535 A.2d 1263, 1267 (R.I.1988). Several other jurisdictions similarly have held that the doctrine of absolute privilege applies to statements made in the context of judicial or quasi-judicial proceedings. *See, e.g., Rioux v. Barry*, 283 Conn. 338, 927 A.2d 304, 308 (2007) (indicating that absolute immunity bars defamation claims that arise from statements made in the

course of judicial or quasi-judicial hearings); *Pickering v. Frink,* 123 N.H. 326, 461 A.2d 117, 119 (1983) (stating that statements made in the course of judicial proceedings are absolutely privileged from liability in civil actions, provided that they are pertinent to the proceeding). However, based on the nature of the communication, we are not convinced that the notice required under § 45–15–5 is protected by an absolute privilege.

 Generally, absolute privilege is afforded in the context of judicial proceedings to encourage witnesses to come forward and speak freely about civil or criminal matters. *Rioux,* 927 A.2d at 308; *Lindeman v. Lesnick,* 268 Va. 532, 604 S.E.2d 55, 58 (2004); *see also* 50 Am. Jur.2d *Libel and Slander* § 283 (2006). The doctrine of absolute privilege exists because "it is more important that witnesses be free from the fear of civil liability for what they say than that a person who has been defamed by their testimony have a remedy." *Aborn v. Lipson,* 357 Mass. 71, 256 N.E.2d 442, 443 (1970). An absolute privilege, however, should be available only in situations in which the public interest is vital and apparent because such a privilege serves as a bar to an injured party from recovering recompense. *McGranahan v. Dahar,* 119 N.H. 758, 408 A.2d 121, 124 (1979).

The key to establishing whether absolute privilege applies to a particular communication is determining whether it was made in the context of a judicial or quasi-judicial proceeding. This Court has held that "the term 'judicial proceedings' is not limited to only those proceedings that occur in a court of law. Instead, the term incompasses [*sic* ] '[a]ny proceeding wherein judicial action is invoked and taken.' " *Roberts v. Cranston Zoning Board of Review,* 448 A.2d 779, 781 (R.I.1982) (quoting Black's Law Dictionary 762 (5th ed. 1979)).

Judicial proceedings also include "all proceedings in which an officer or tribunal exercises judicial functions." Restatement (Second) *Torts* § 588, cmt. *d.* at 251 (1977). We have held that judicial proceedings include hearings that are conducted by administrative bodies that make legal determinations. *Hillside Associates,* 642 A.2d at 668. In *Hillside Associates,* the zoning board was vested with the authority to conduct hearings for aggrieved parties, to give public notice, and to provide due process to the parties involved. *Id.* at 669. The zoning board also was required to keep minutes of the proceedings and to maintain records showing the votes of each member. *Id.* This Court held that the attributes of the zoning board hearing in *Hillside Associates* possessed "sufficient trappings of the judicial process" for the purposes of the malicious prosecution tort. *Id.* We similarly held in *Western Mass. Blasting Corp. v. Metropolitan Property and Casualty Insurance Co.,* 783 A.2d 398 (R.I.2001), that judicial proceedings are to be broadly construed to include quasi-judicial proceedings, such as arbitrations, and that communications made during arbitrations are protected by absolute privilege. *See id.* at 403 n. 3 (noting that "[w]e now explicitly hold that * * * statements made in quasi-judicial proceedings such as arbitrations shall be privileged against suits for defamation").

Contrasted with zoning boards and arbitration proceedings, a city or town council, upon receipt of a notice of demand in accordance with § 45–15–5, has no judicial or adjudicatory responsibility or authority such that an absolute privilege should apply. The notice required under § 45–15–5 is simply that: notice of a claim or demand. The Portsmouth Town Council is not an adjudicatory or judicial body of the town and was not called upon to adjudicate the merits of the claim. The sole purpose

of § 45–15–5 is to provide notice to the municipality and to allow for an opportunity to decide whether to attempt a settlement or allow the matter to proceed to litigation.

The plaintiff contends that the town council was acting with quasi-judicial authority when it weighed the sufficiency of plaintiff's allegations and determined that settlement was not appropriate. The plaintiff relies on language from *Depault v. Paine,* 526 A.2d 858, 860 (R.I.1987), in which we noted that when confronted with a claim under § 45–15–5, the town council "may consider whether a claim should be litigated or whether it should be paid" and that "it is the function of the town council to take all factors, including the uncertainties and expense of litigation, into account when determining whether or to what extent a compromise should be made." However, *Depault* stands for the proposition that § 45–15–5 is a notice provision designed to afford the municipality with a reasonable opportunity to determine whether a claim should be litigated or settled; it does not suggest in any way that the town council acts in a quasi-judicial capacity upon receipt of the claim. *See Depault,* 526 A.2d at 859. Additionally, the term "quasi-judicial" suggests that an administrative body will be making a determination that will have an impact on a party's rights, that it will conduct a hearing, consider evidence, and reach a decision relative to the issues raised in the complaint. *See Hillside Associates,* 642 A.2d at 667–68 (describing quasi-judicial functions of administrative bodies).

The defendants contend that absolute privilege does not apply in this instance because the notice required by § 45–15–5 was not part of a judicial or quasi-judicial proceeding. We agree. Upon receipt of the notice, the town council was not charged with hearing testimony, reviewing evidence, or rendering a decision regarding the outcome of the matter; the town was merely being informed of its status as a potential party to proposed litigation.

Moreover, filing a notice of claim or demand with the town council in accordance with § 45–15–5 is but a "condition precedent to filing suit against the city." *Mesolella v. City of Providence,* 508 A.2d 661, 666 (R.I.1986). The language of the statute provides that if satisfaction is not made to the party filing notice of claim within forty days "after the presentment of the claim," the person may then "commence his * * * action." Section 45–15–5. The notice is not part of the judicial proceeding, but is simply a prerequisite to filing a complaint. Only after the members of the town council are on notice and fail to provide satisfaction may the judicial proceeding commence. Therefore, the notification letter plaintiff submitted to the town council is not protected by absolute privilege because it was not part of a judicial proceeding, nor was the town acting as a quasi-judicial body when it received the notice. However, our conclusion that communications made under § 45–15–5 are not absolutely privileged does not end our analysis because such communications may be qualifiedly privileged.

The petition clause of the First Amendment to the United States Constitution guarantees "the right of the people * * * to petition the government for a redress of grievances." It is of note that the United States Supreme Court has held that absolute immunity is not guaranteed under the First Amendment's petition clause. *McDonald v. Smith,* 472 U.S. 479, 484, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985). The United States Supreme Court stated in *McDonald* that, although the right to petition is an integral aspect of self-government, "it does not follow that the Framers

of the First Amendment believed that the Petition Clause provided absolute immunity from damages for libel." *Id.* at 483, 105 S.Ct. 2787. Notably, the Court in *McDonald* stated that filing a complaint in court is a form of petitioning activity; but it added that "baseless litigation is not immunized by the First Amendment right to petition." *Id.* at 484, 105 S.Ct. 2787 (quoting *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983)). McDonald, an unsuccessful candidate for U.S. Attorney, brought an action for libel against a citizen who had sent two defamatory letters to the President of the United States and other government officials alleging that the candidate was unfit for the position. *McDonald,* 472 U.S. at 480–81, 105 S.Ct. 2787. The letters contained false and inflammatory statements, and the candidate was deprived of the appointment. *Id.* The Court concluded that the Petition Clause did not guarantee absolute immunity from damages for libel, but it added that damages may be recovered only if the petitioner is shown to have acted with malice. *Id.* at 484, 105 S.Ct. 2787 (citing *White v. Nicholls,* 44 U.S. (3 How.) 266, 291, 11 L.Ed. 591 (1845)).

In the case before us, it is contended that plaintiff, under the guise of providing notice of a claim, used a broad brush in detailing what could be characterized as scurrilous allegations against Chief Seale and Lt. Vierra, including allegations of criminal conduct. We also note that some of the statements set forth in the eleven-page letter were not similarly replicated in the civil complaint, which, of course, might have given rise to sanctions under Rule 11 of the Superior Court Rules of Civil Procedure. We are hard-pressed to hold that parties who must provide notice under § 45-15-5 have carte blanche immunity to make sweeping and slanderous statements that would not be tolerated in a complaint governed by Rule 11. Clearly, such baseless claims and allegations are not protected by absolute immunity under *McDonald. See McDonald,* 472 U.S. at 484, 105 S.Ct. 2787.

▮ However, in light of the plaintiff's right to petition for the redress of grievances, the contents of the notice may be protected by a qualified privilege. A qualified privilege allows a person to avoid liability for a false and defamatory statement if the publication is such "that the publisher acting in good faith correctly or reasonably believes that he has a legal, moral or social duty to speak out, or that to speak out is necessary to protect either his own interests, or those of third person[s], or certain interests of the public." *Ponticelli v. Mine Safety Appliance Co.,* 104 R.I. 549, 551, 247 A.2d 303, 305–06 (1968). Unlike absolute privilege, a qualified privilege may be lost if the allegedly defamatory statement is the product of ill will or malice. *Kevorkian v. Glass,* 913 A.2d 1043, 1048 n. 4 (R.I.2007). In cases in which a qualified privilege may apply, the allegedly defamed party has the burden of proving that the plaintiff submitted a defamatory letter to the town council, with malice and the intent to embarrass, humiliate or defame the defendants. *Avilla,* 935 A.2d at 96 (stating that once the privilege is established, the defamed person must prove express malice). Thus, to prevail, the defendants must demonstrate that the "primary motivating force for the communication was the publisher's ill will or spite * * *." *Id.* (quoting *Swanson v. Speidel Corp.,* 110 R.I. 335, 339, 293 A.2d 307, 309 (1972)). Accordingly, we vacate the motion justice's decision dismissing the defendants' counterclaim. We reinstate the claim and remand the case to the Superior Court on the individual defendants' counterclaim.

## Conclusion

For the reasons set forth in this opinion, we affirm in part and vacate in part. We affirm the trial justice's decision to grant judgment as a matter of law in favor of the defendants on the malicious prosecution and tortious interference claims, and we reverse the motion justice's decision to grant the plaintiff's Rule 12(b)(6) motion to dismiss the defendants' counterclaim for defamation. The papers in this case may be remanded to the Superior Court.